ILLINOIS *v.* BATCHELDER

No. 82–947.   Decided July 6, 1983

Per Curiam.

An Illinois statute, Ill. Rev. Stat, ch. 95½, ¶11–501.1 (1981), provides that any person who drives an automobile in that State consents to take a breath-analysis test when requested to do so by an officer as incident to an arrest for driving while intoxicated.[1]   The statute also prescribes the manner in which the test is to be administered and provides a nine-point list of matters of which the arresting officer is to inform the arrestee, including the right to refuse to submit to a breath analysis and the fact that such a refusal may be admitted in evidence against him "in any hearing concerning the suspension, revocation or denial of his license or permit." ¶11–501.1(a)(4).   Finally relevant for our purposes is subsection (d) of ¶11–501.1, which provides in pertinent part:

> "The arresting officer shall file with the Clerk of the Circuit Court for the county in which the arrest was made, a sworn statement naming the person refusing to take and complete the test requested under the provisions of this Section. . . . Such sworn statement shall include a statement that the arresting officer had reasonable cause to believe the person was driving the motor vehicle within this State while under the influence of intoxicating liquor . . . .
>
> "The Clerk shall thereupon notify such person in writing that his privilege to operate a motor vehicle will be suspended unless, within 28 days from the date of mail-

---

[1] Illinois Rev. Stat., ch. 95½, ¶11–501.1 (1981), provides in pertinent part:

"Suspension of license—Implied consent.   (a) Any person who . . . drives a motor vehicle anywhere within this State thereby consents, under the terms of this Section, to take and complete a test or chemical analysis of his breath to determine the alcoholic content of his blood when made as an incident to and following his lawful arrest, evidenced by the issuance of a Uniform Traffic Ticket, for an offense defined in Section 11–501 of this Act [proscribing driving while intoxicated] or a similar provision of a municipal ordinance."

ing of the notice, he shall request in writing a hearing thereon. . . .

". . . Such hearing shall proceed in the Court in the same manner as other civil proceedings, except that the scope of such proceedings shall cover only the issues of whether the person was placed under arrest for [driving while intoxicated], whether the arresting officer had reasonable grounds to believe that such person was driving while under the influence of intoxicating liquor, whether the person was informed orally and in writing as provided in paragraph (a) that his privilege to operate a motor vehicle would be suspended if he refused to submit to and complete the test and whether, after being so advised, he refused to submit to and complete the test upon request of the officer."[2]

Respondent Milton D. Batchelder was stopped while driving his automobile by an officer of the Peoria, Illinois, Police Department after the officer observed respondent driving in a reckless and erratic manner. After completing the stop, the officer approached respondent, determined that he was intoxicated, and arrested him on the charge of driving under the influence of intoxicating liquor. The officer thereafter requested that respondent take a breath-analysis test. Respondent refused. The officer then executed and filed a sworn statement that read in pertinent part:

"I hereby certify that I have placed the above-named person under arrest, and that I had at the time of arrest reasonable grounds to believe that said person was driving a motor vehicle in this State while under the influ-

---

[2] Two implied-consent statutes labeled ch. 95½, ¶ 11–501.1, were passed by the Illinois General Assembly on the same day. The Appellate Court of Illinois in this case relied on the version we have quoted in text and in n. 1, *supra.* In any event, the differences in language between the two statutes do not affect our analysis in this case. See Ill. Rev. Stat., ch. 1, ¶ 1105 (1981).

ence of intoxicating liquor in that: TRAVELING TOO
FAST IN ALLEY WITH PEDESTRIANS AROUND, CROSSED
WALNUT W/O SLOWING, MAINTAINED SPEED BEHIND
SLIPPER CLUB THEN PARKED ABRUPTLY BEHIND 519
S. W. ADAMS. I further certify that said person did
willfully refuse to submit to the breath analyses when re-
quested to do so in accordance with Section 11–501.1 of
the Illinois Vehicle Code, after being informed of the
possible consequences of his or her refusal." Pet. for
Cert. 5–6.

To avoid having his license automatically suspended, respond-
ent exercised his statutory right to request a hearing pur-
suant to ¶ 11–501.1(d).

Prior to taking evidence, the judge presiding at the hear-
ing asked if there were any motions. Respondent's counsel
moved to dismiss the officer's affidavit, quoted above, on the
ground that it did not state any facts showing that respond-
ent was under the influence of intoxicating liquor at the time
of his arrest. The judge found that the affidavit did not com-
ply with ¶ 11–501.1(d) because it failed to state facts showing
that respondent was under the influence of intoxicating liquor
at the time of his arrest. An order was entered denying the
State's request for suspension of respondent's license.

The State appealed and the Appellate Court of Illinois,
Third Judicial District, agreed with the trial court that the
facts stated in the affidavit were insufficient to support the
conclusion that respondent was intoxicated at the time he
was arrested. 107 Ill. App. 3d 81, 437 N. E. 2d 364 (1982).
The Appellate Court, however, held that the affidavit liter-
ally complied with the requirements of ¶ 11–501.1(d); that
subsection requires only that the officer's affidavit state that
he "had reasonable cause to believe the person was driving
. . . while under the influence of intoxicating liquor." The
affidavit nonetheless was deemed "insufficient . . . due to its
failure to comport with the United States Constitution, spe-

cifically, the fourth and fourteenth amendments thereof."
*Id.*, at 83, 437 N. E. 2d, at 366.

Relying on our decision in *Delaware* v. *Prouse*, 440 U. S.
648 (1979), the Appellate Court opined that "[t]he fourth and
fourteenth amendments to the United States Constitution
pertain to this situation because stopping an automobile and
detaining its occupants constitute a 'seizure' within the mean-
ing of those amendments . . . ." 107 Ill. App. 3d, at 84, 437
N. E. 2d, at 367. The court also relied on *Terry* v. *Ohio*, 392
U. S. 1 (1968), for the proposition that "[t]he permissibility of
a particular law enforcement practice is judged by balancing
its intrusion on the individual's fourth amendment interests
against its promotion of legitimate governmental interests."
107 Ill. App. 3d, at 84, 437 N. E. 2d, at 367. Applying this
standard here, the Appellate Court held that ¶ 11–501.1(d) is
constitutional only if it requires an arresting officer to set
out, *in his affidavit* prepared pursuant to ¶ 11–501.1(d), "the
underlying circumstances which provided him with a reason-
able belief that the arrested person was driving under the
influence of intoxicating liquor." *Ibid.*

In its application of the Federal Constitution to the Illinois
implied-consent statute, the Appellate Court inexplicably
failed to look to how this Court undertook a similar task in
*Mackey* v. *Montrym*, 443 U. S. 1 (1979). In *Mackey*, we
held that the Massachusetts statute mandating suspension
of a driver's license because of his refusal to take a breath-
analysis test upon arrest for driving under the influence of
intoxicating liquor did not violate the Due Process Clause of
the Fourteenth Amendment. The procedures provided for
in the Illinois implied-consent statute are, if anything, even
more solicitous of due process values than those we upheld in
*Mackey*.

We noted in *Mackey* that "suspension of a driver's license
for statutorily defined cause implicates a protectible property
interest." *Id.*, at 10. There, as here, the only question pre-
sented was "what process is due to protect against an errone-

ous deprivation of that interest." *Ibid.*[3] We held that this question should be resolved by considering the following three factors:

> "'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Ibid.*, quoting *Mathews* v. *Eldridge*, 424 U. S. 319, 335 (1976).

The analysis utilized in *Mackey* is equally applicable to and dispositive of this case.

First, the driver's interest in the continued possession and use of his license was recognized in *Mackey*. However, in undertaking the first step of the *Eldridge* balancing process in *Mackey*, our concern centered on "[t]he duration of any potentially wrongful deprivation of a property interest," 443 U. S., at 12. Under the Massachusetts statute, the license of a driver who refused to submit to a breath-analysis test was suspended pending the outcome of a hearing that he was entitled to demand. There is no concern or risk under the Illinois statute that a driver will be deprived of his license

---

[3] The Appellate Court purported to rely on the Fourth, as well as the Fourteenth, Amendment. To the extent that there are Fourth Amendment interests at stake here, see *Delaware* v. *Prouse*, 440 U. S. 648, 662–663 (1979), they are amply protected so long as the officer who arrested respondent had "at least articulable and reasonable suspicion that . . . [respondent was] subject to seizure for violation of law . . . ." *Id.*, at 663. That fact would be determined at the hearing provided for under ¶ 11–501.1(d). The logical thrust of the Appellate Court's opinion is that respondent was somehow denied due process because the arresting officer's affidavit did not specify the grounds which led him to believe that respondent was driving under the influence of alcohol. We thus treat the Appellate Court's opinion as resting exclusively on due process grounds.

prior to a hearing. Paragraph 11–501.1(d) clearly grants a driver the right to have a hearing *before* his license is suspended. Thus, respondent can seek no solace in the first step of the *Eldridge* analysis.

"[T]he second stage of the *Eldridge* inquiry requires consideration of the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used." *Mackey* v. *Montrym*, 443 U. S., at 13. In *Mackey*, we noted that "'something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Ibid.*, quoting *Dixon* v. *Love*, 431 U. S. 105, 113 (1977). Clearly, then, the fact that ¶11–501.1(d) provides for a *predeprivation* hearing abundantly weights this second part of the *Eldridge* analysis in favor of the constitutionality of the Illinois implied-consent scheme.

"The third leg of the *Eldridge* balancing test requires us to identify the governmental function involved; also, to weigh in the balance the state interests served by the summary procedures used, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." *Mackey* v. *Montrym*, *supra*, at 17. The interest of the States in depriving the drunk driver of permission to continue operating an automobile is particularly strong. We recently commented on "[t]he carnage caused by drunk drivers" in *South Dakota* v. *Neville*, 459 U. S. 553, 558 (1983). See also *Mackey* v. *Montrym*, *supra*, at 17–18; *Perez* v. *Campbell*, 402 U. S. 637, 657 and 672 (1971) (BLACKMUN, J., concurring); *Tate* v. *Short*, 401 U. S. 395, 401 (1971) (BLACKMUN, J., concurring); *Breithaupt* v. *Abram*, 352 U. S. 432, 439 (1957). Indeed, it is the effect of the Appellate Court's opinion on the Illinois effort to halt this "carnage" that has prompted our summary action in this case. That interest is substantially served by the procedures outlined in ¶11–501.1(d). Again, the fact that we upheld a more summary procedure in *Mackey* refutes the suggestion that the Illinois scheme runs afoul of the *Eldridge* test.

Accordingly, we conclude that the Constitution does not require arresting officers in Illinois, in enforcing that State's implied-consent statute, to recite in an affidavit the specific and concrete evidentiary matters constituting "the underlying circumstances which provided him with a reasonable belief that the arrested person was driving under the influence of intoxicating liquor." 107 Ill. App., at 84, 437 N. E. 2d, at 367. The driver's right to a hearing *before* he may be deprived of his license for failing to submit to a breath-analysis test accords him all of, and probably more than, the process that the Federal Constitution assures. The petition for certiorari is granted, the judgment of the Appellate Court of Illinois, Third Judicial District, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

This case comes to us from an intermediate Illinois appellate court. It is a case that the Illinois Supreme Court declined to review. Its practical consequences concern the amount of detail that Illinois police officers in the Third Appellate District must include in an affidavit supporting a petition to suspend a driver's license. In final analysis the only question presented relates to how an Illinois statute is to be implemented in one part of the State. I suspect that the Illinois Supreme Court may have decided not to take this case because it preferred to address the question presented in a case in which both parties would be adequately represented.

The only paper filed in behalf of the losing party in this Court reads, in full, as follows:

Court Clerk;
Re: Illinois vs: Milton D. Batchelder
No: 82–947

In regard to your letter of 3–31–83 pertaining to the above captioned matter.

I have a heart problem and am unemployed.

I do not have the funds to hire an attorney.

Is it possible for the court to appoint me counsel or for the court to rule on the record that is on appeal?

I am unlearned at law and have had little formal education.

Unless the court can give me some help I will not be able to pursue this matter.

This letter written by;

    Donald E. Worlow

    302 Pontiac Rd.

    Marquette Hgts., Ill. 61554

For Milton D. Batchelder

    /s/ Milton Batchelder

If a case is important enough to merit a decision on the merits by this Court, I believe it also should be important enough to justify the appointment of counsel to represent the party defending the judgment of the court below. I respectfully dissent from the Court's summary disposition.