**CHARLES KERNAN**, Petitioner–Appellant, v. **IRWIN TANAKA**, Administrative Director of the Courts, State of Hawai'i, Respondent–Appellee

NO. 15908

(CASE NO. AR91–0008
Original Case No. 91–00174)

**JETON LEE ALLEN**, Petitioner–Appellant, v. **IRWIN TANAKA**, Administrative Director of the Courts, State of Hawai'i, Respondent–Appellee

NO. 15906

(CASE NO. AR91–0017
Original Case No. 91–00201)

**PAUL STEWART**, Petitioner–Appellant, v. **IRWIN TANAKA**, Administrative Director of the Courts, State of Hawai'i, Respondent–Appellee

NO. 15905

(CASE NO. AR91–0026
Original Case No. 91–00477)

DISTRICT COURT OF THE FIRST CIRCUIT,
HONOLULU DIVISION

AUGUST 9, 1993

LUM, C.J.,* MOON, KLEIN, LEVINSON, JJ., AND
INTERMEDIATE COURT OF APPEALS CHIEF
JUDGE BURNS, ASSIGNED BY REASON
OF VACANCY

---

*Chief Justice Lum, who heard oral argument, retired from the court on March 31, 1993. *See* HRS § 602–10 (1985).

4

6

8

OPINION OF THE COURT BY KLEIN, J.

Petitioners–Appellants Charles Kernan (Kernan), Paul Stewart (Stewart), and Jeton Allen (Allen) (collectively "Appellants") appeal from a district court order affirming their license revocations pursuant to Hawai'i Revised Statutes (HRS) chapter 286, Part XIV. (Supp. 1992) (Administrative Revocation Program). Each Appellant was separately arrested for driving under the influence of intoxicating liquor (DUI) in violation of HRS § 291–4[1] (Supp. 1992) and given a notice of administrative revocation.

---

[1] HRS § 291–4 (Supp. 1992) provides in pertinent part:
    (a)  A person commits the offense of driving under the influence of intoxicating liquor if:

The Administrative Revocation Program sets out the rules and procedures for license revocations. The process consists of five main stages: 1) notice of license revocation and a thirty–day temporary permit are issued by the police at the time and place of the arrest;[2] 2) an adminis-

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with .10 per cent or more, by weight of alcohol in the person's blood.

[2] HRS § 286–252 (Supp. 1992) provides:

As used in this part, the notice of administrative revocation:

(1) Establishes that the arrestee's driving privilege in this State shall be terminated thirty days after the date of arrest or such later date as is established by the director under section 286–259 if the director administratively revokes the arrestee's license;

(2) Establishes the date on which administrative revocation proceedings against the arrestee were initiated; and

(3) Serves as a temporary permit to drive as provided in section 286–255.

HRS § 286–254 (Supp. 1992) provides in pertinent part:

(a) The notice of administrative revocation shall provide, at a minimum and in clear language, the following general information relating to administrative revocation:

(1) The statutory authority for administrative revocation;

(2) An explanation of the distinction between administrative revocation and a suspension or revocation imposed under section 291–4; and

(3) That criminal charges filed pursuant to section 291–4 may be prosecuted concurrently with the administrative action.

(b) The notice, when completed by the arresting officer and issued to the arrestee, shall contain at a minimum the following information relating to the arrest:

trative review occurs automatically;[3] 3) an administra-

    (1)  Information identifying the arrestee;

    (2)  The specific violation for which the person was arrested;

    (3)  The date issued and the date the administrative revocation is scheduled to go into effect;

    (4)  That the arrestee was informed of the sanctions of this part and of the consequences of refusing to be tested for alcohol content of the blood and whether or not the arrestee consented to be tested;

    (5)  The expiration date of the temporary permit; and

    (6)  That the arrest will be administratively reviewed.

[3] HRS § 286–258 (Supp. 1992) provides in pertinent part:

(a) The director shall automatically review the issuance of a notice of administrative revocation, and a written decision administratively revoking the license or rescinding the notice of administrative revocation shall be mailed to the arrestee no later than eight days after the date the notice was issued.

(b) The arrestee shall have the opportunity to demonstrate in writing why the arrestee's license should not be administratively revoked and shall submit any written information within three days of the notice, either by mail or in person, to the director's office or to any office or address designated by the director for that purpose.

(c) In conducting the administrative review, the director shall consider:

    (1)  Any sworn or unsworn statement or other evidence provided by the arrestee;

    (2)  The breath or blood test results, if any; and

    (3)  The sworn statements of the law enforcement officials, and other evidence or information required by section 286–257.

(d) The director shall administratively revoke the arrestee's driver's license if the director determines that:

    (1)  There existed reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock established and operated in compliance with sections 286–162.5 and 286–162.6;

    (2)  There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and

tive hearing is conducted upon request;[4] 4) a district court

---

     (3)   The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of 0.10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

[4] HRS § 286–259 (Supp. 1992) provides in pertinent part:

     (a)   If the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision within five days of the date of the administrative review decision is mailed. The hearing shall be scheduled to commence no later than twenty–five days from the date the notice of administrative revocation was issued. The director may continue the hearing only as provided in subsection (j).

     (b)   The hearing shall be held at a place designated by the director, as close to the location of the arrest as practical.

     (c)   The arrestee may be represented by counsel.

     (d)   The director shall conduct the hearing and have authority to:

     (1)   Administer oaths and affirmations;

     (2)   Examine witnesses and take testimony;

     (3)   Receive and determine the relevance of evidence;

     (4)   Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;

     (5)   Regulate the course and conduct of the hearing; and

     (6)   Make a final ruling.

     (e)   The director shall affirm the administrative revocation only if the director determines that:

     (1)   There existed reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock established and operated in compliance with sections 286–162.5 and 286–162.6;

     (2)   There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and

     (3)   The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the

judicial review occurs upon request;[5] and 5) an appeal of the district court's decision may be brought. *See* HRS §§ 602–5(1) and 641–1(a).

---

> motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of .10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.
>
> * * * * *
>
> (i) The director's decision shall be rendered in writing and mailed to the arrestee no later than five days after the hearing. If the decision is to reverse the administrative revocation, the director shall return the arrestee's license along with a certified statement that administrative revocation proceedings have been terminated. If the decision sustains the administrative revocation, the director shall mail to the arrestee a written decision indicating the duration of the administrative revocation and any other conditions or restrictions as may be imposed pursuant to section 286–261.

[5] HRS § 286–260 (Supp. 1992) provides:

> (a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. The petition shall be filed with the clerk of the district court in the district in which the offense occurred and shall be accompanied by the required filing fee for civil actions. The filing of the petition shall not operate as a stay of the administrative revocation nor shall the court stay the administrative revocation pending the outcome of the judicial review. The petition shall be appropriately captioned. The petition shall state with specificity the grounds upon which the petitioner seeks reversal of the administrative revocation.
>
> (b) The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing without taking of additional testimony or evidence. If the petitioner fails to appear without just cause, the court shall affirm the administrative revocation.
>
> (c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

Appellants' licenses were revoked after an administrative review by the Administrative Drivers License Revocation Office of the Judiciary of the State of Hawai'i (ADLRO). The revocations were affirmed in administrative hearings. Appellants' appeals to the district court asserted that the procedures established by the statutory scheme codified in HRS chapter 286, Part XIV denied them due process of law. The district court affirmed the revocations and ruled the Administrative Revocation Program constitutional. We consolidated the appeals for review because they contain common issues. The issues on appeal are whether the Administrative Revocation Program facially violates Appellants' due process rights and whether the application of the Administrative Revocation Program violated Appellants' rights by failing to fulfill the Program requirements. For the reasons set forth below, we find no constitutional or other infirmities and affirm.

## I. Facts

Police arrested Kernan on August 9, 1991 for DUI in violation of HRS § 291–4 and issued a Notice of License Revocation and a thirty–day driving permit, pursuant to HRS § 286–255. Although notified of the implied consent to submit to a blood or breath test and the penalties for refusing to take either test, Kernan refused to be tested. The ADLRO director reviewed the evidence provided by the law enforcement officers and revoked Kernan's license. Kernan's requested administrative hearing was held on August 30, 1991. The hearing officer upheld the revocation and Kernan requested judicial review, which was held by the district court on November 18, 1991. Kernan challenged the constitutionality of the revocation process. The district court affirmed the revocation,

finding the revocation process constitutional. Kernan now appeals, citing as error: 1) the lack of properly sworn statements of the arresting officer and the unavailability of the entire police report in violation of the requirements of HRS § 286–257(a)(1)(A); 2) alleged due process deficiencies of the Administrative Revocation Program; and 3) the inadmissibility of evidence used to establish probable cause to believe that Kernan was driving under the influence at the time of the arrest as required by HRS §§ 286–258(d)(2) and 286–259(e)(2).

Police arrested Allen on August 13, 1991 for DUI in violation of HRS § 291–4 and issued a Notice of License Revocation and a thirty–day driving permit, pursuant to HRS § 286–255. He was notified of the implied consent law and submitted to a breath test that showed a .142 percent blood alcohol content. The director of the ADLRO reviewed the evidence and revoked Allen's license. Allen requested an administrative hearing, which was held on September 20, 1991. The hearing officer upheld the revocation and Allen requested judicial review, which was held in district court on December 2, 1991. The district court affirmed the revocation and Allen now appeals. In addition to the due process and the lack of proper documents arguments which Kernan raises, Allen claims that the transcript from his administrative hearing should not have been entered into the record because it was not properly certified.

Police arrested Stewart on September 3, 1991 for DUI in violation of HRS § 291–4 and issued a Notice of License Revocation, pursuant to HRS § 286–255. He did not receive a temporary permit because his license was already under suspension due to a prior incident. He was notified of the implied consent law and submitted to a breath test that showed a .129 percent blood alcohol

content. The director of the ADLRO reviewed the evidence and revoked Stewart's license. Stewart requested an administrative hearing, which was scheduled for October 2, 1991. Stewart failed to appear at the hearing, claiming that he had only received notice the day before and was unable to attend. The hearing officer affirmed the revocation and Stewart requested judicial review, which ensued on December 2, 1991. Like Kernan and Allen, Stewart raised similar constitutional claims. The district court affirmed his revocation and Stewart now appeals.

The issues before this court are: 1) Does the Administrative Revocation Program, on its face, violate Appellants' due process rights? 2) Were improper documents submitted to the ADLRO? 3) Were the transcripts from Allen's administrative hearing properly certified? 4) Did probable cause exist to believe that Kernan was driving under the influence of intoxicating liquor? and 5) Does Stewart have standing to challenge the Administrative Revocation Program?

## II. **Jurisdiction**

We raise, *sua sponte*, the issue of whether we have jurisdiction over these appeals. Appellate courts have an obligation to insure they have jurisdiction to hear and determine each case. *State v. Moniz*, 69 Haw. 370, 742 P.2d 373 (1987). HRS § 286–260 does not specifically provide for an appeal beyond the district court level.[6] Our inquiry is whether the lack of a statutory provision providing for a further appeal is evidence that the legislature

---

[6] Although the previous license revocation statute sections provided for an appeal of a district court decision to the supreme court, the revocation action under those sections was taken by the district court. No administrative program existed. By directing where an appeal of the

did not authorize an appeal beyond the district court level or whether the omission of statutory authority supports a conclusion that the legislature intended the general statutes governing appeals to be applicable. *See* HRS §§ 602–5(1)[7] and 641–1(a)[8] (1985).

HRS § 602–5(1) gives the supreme court appellate jurisdiction over cases "properly brought before it on any appeal allowed by law from any other court or agency[.]" Furthermore, HRS § 641–1(a) provides in part that "[a]ppeals shall be allowed . . . from all final judgments, orders, or decrees of circuit and district courts . . . *except as otherwise provided by law.*" (Emphasis added.) Thus, any district court final judgment, order, or decree may be appealed to the supreme court, unless a specific statute provides otherwise. Arguably, HRS § 286–260 provides an exception to the general appealability of district court judgments by providing that an appeal from the administrative hearing decision shall be taken to the district

---

hearing officer's decision should be taken, HRS § 286–260 prevents direct appeals of the administrative revocation to the circuit or supreme court.

[7] HRS § 602–5 (1985) provides in pertinent part:
The supreme court shall have jurisdiction and powers as follows:
    (1)   To hear and determine all questions of law, or of mixed law and fact, which are properly brought before it on any appeal allowed by law from any other court or agency[.]

[8] HRS § 641–1 (1985) provides in pertinent part:
    (a)  Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the supreme court or to the intermediate appellate court, except as otherwise provided by law and subject to the authority of the intermediate appellate court to certify reassignment of a matter directly to the supreme court and subject to the authority of the supreme court to reassign a matter to itself from the intermediate appellate court.

court. We conclude, however, that the omission of language specifically providing further appeal to this court does not signal finality at the district court level. This is because HRS § 286–260 makes no attempt, by its own terms, to limit the general right of appeal from all final district court judgments as set out in HRS § 641–1(a).

We recognize the potential hardships of license revocation, and conclude that, had the legislature intended to limit an aggrieved person's rights, it would have included in the Administrative Revocation Program specific statutory language terminating a further appeal. Thus, we hold that, pursuant to HRS §§ 602–5(1) and 641–1(a), jurisdiction properly lies in this court to hear and determine appeals from district court judgments after an administrative hearing.

## III. **The Statute**

Administrative revocation begins when a police officer stops a motorist suspected of DUI, arrests him or her,[9] and takes possession of the arrestee's driver's license, giving the arrestee notice of the revocation action.

---

[9] HRS § 286–255 (Supp. 1992) provides in pertinent part:

Whenever a person is arrested for a violation of section 291–4, on a determination by the arresting officer that:

\* \* \* \* \*

(2)    There was probable cause to believe that the arrestee was driving, operating, or in actual physical control of the motor vehicle while under the influence of intoxicating liquor;

the arresting officer shall immediately take possession of any license held by the person and request the arrestee to take a test for concentration of alcohol in the blood. The arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer shall also inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test. The arresting officer shall

The police also present the arrestee with a thirty–day temporary driving permit. HRS § 286–254 requires informing the arrestee of the specific violation for which he or she is arrested, the consequences of refusing to be tested for blood–alcohol content, that the revocation will be administratively reviewed, and that he or she may request an administrative hearing after the review. HRS § 286–254.

An administrative review of the police officer's actions occurs automatically after the arrest. HRS § 286–258. The arrestee is allowed to submit written information for the reviewing officer to consider along with the breath or blood test results and the sworn statements of the law enforcement officials. HRS § 286–258(b)–(c) and HRS § 286–257. The reviewing officer will revoke the arrestee's license if it is determined that: (1) reasonable suspicion to stop the driver existed; (2) probable cause was shown that the driver operated the vehicle under the influence of intoxicating liquor; and (3) the evidence proved by a preponderance that the arrestee did in fact drive under the influence. HRS § 286–258(d). A written decision is mailed to the arrestee within eight days after the arrest and issuance of the notice of the revocation. HRS § 286–258(a). If the arrestee's license is revoked,[10] he or

---

then complete and issue to the arrestee a notice of administrative revocation and shall indicate thereon whether the notice shall serve as a temporary permit. The notice shall serve as a temporary permit, unless at the time of arrest the arrestee was unlicensed, the arrestee's license was revoked or suspended, or the arrestee had no license in the arrestee's possession.

[10] If the reviewing officer revokes the license, the driver may still drive with the thirty–day driving permit. Thus, the revocation does not become effective until the permit expires. This allows the driver to continue driving until the full administrative process is completed.

she is further informed of the right to request an administrative hearing, of the right to review the evidence, and all applicable procedures. HRS § 286–258(f).

The arrestee is provided five days from the mailing date of the administrative review decision to request an administrative hearing. HRS § 286–259(a). The hearing must be scheduled to commence no later than twenty–five days after the notice of revocation was issued, unless continued by the director for good cause. HRS § 286–259(a). The arrestee may be represented by counsel. HRS § 286–259(c). The director conducting the hearing (hearing officer) has the authority to examine witnesses and take testimony, receive and determine the relevant evidence, issue subpoenas, regulate the hearing, and make a final ruling. HRS § 286–259(d). The hearing officer may affirm the revocation if: (1) reasonable suspicion to stop the driver is found to have existed; (2) probable cause to believe that the driver was operating the vehicle under the influence of intoxicating liquor is shown; and (3) there is sufficient evidence to prove by a preponderance that the driver did in fact drive under the influence. HRS § 286–259(e). The hearing is recorded in a manner "to be determined by the director." HRS § 286–259(h). If the hearing is continued for good cause at the request of the director, the director is required to extend the arrestee's temporary driving permit during the period of the delay. HRS § 286–259(j). The final written decision of the director is mailed to the arrestee within five days of the hearing.[11] HRS § 286–259(i).

---

[11] The twenty–five day hearing commencement requirement and the five–day decision deadline insure that the final administrative hearing decision is rendered prior to the expiration of the thirty–day temporary permit when the revocation becomes effective.

An adverse decision of the hearing officer may be appealed to the district court by filing a petition for judicial review within thirty days after the adverse decision is mailed. HRS § 286–260(a). There is no stay of the revo- cation pending the appeal. HRS § 286–260(a). Judicial review is confined to the record of the administrative hearing. HRS § 286–260(b). The issues on appeal may include whether the director exceeded his authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence. HRS § 286–260(c). An affirmation of the revocation by the district court may be appealed to the supreme court under the general jurisdiction statutes. *See* HRS §§ 602–5(1) and 641–1(a). (*See* Part II, *supra*).

The Administrative Revocation Program allows conditional permits to be issued under certain circumstances. HRS § 286–264.[12] The director may issue this type of permit with or without conditions. HRS § 286–264(d).

---

[12] HRS § 286–264 (Supp. 1992) provides in pertinent part:

(a) If an arrestee subject to administrative revocation under this part submitted to a breath or blood test and has no prior alcohol enforcement contacts, the director may, at the request of the arrestee at the administrative hearing, issue a conditional permit allowing the arrestee to drive after a minimum period of absolute license revocation of thirty days if one or more of the following conditions are met:

(1) The arrestee is gainfully employed in a position that requires driving and will be discharged if the arrestee's driving privileges are administratively revoked; or

(2) The arrestee has no access to alternative transportation and therefore must drive to work or to a substance abuse treatment facility or counselor for treatment ordered by the director under section 286–261.

* * * * *

## IV. Constitutional Issues

Appellants submit that the Administrative Revocation Program is constitutionally deficient because it fails to provide sufficient procedural protection to a licensed driver before and after his or her license is revoked. We are called upon to examine whether the procedures of the Administrative Revocation Program provide licensed drivers with adequate due process safeguards.

> In general a claim of a due process right to a hearing requires a two step analysis: (1) is the particular interest which the claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is "property" what specific procedures are required to protect it.

*Aguiar v. Hawai'i Housing Authority*, 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974).

### A. Constitutionally Protected Interest

The first step of the *Aguiar* analysis examines whether the constitution protects the interest at risk. A driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license. *Bell v. Burson*, 402 U.S. 535, 539

---

(d) A conditional permit may include restrictions allowing the arrestee to drive:

    (1) Only during hours of employment for activities solely within the scope of the employment;

    (2) Only during daylight hours; or

    (3) Only for specified purposes or to specific destinations.

(1971). Although driving is a "privilege" rather than a constitutional "right," once conferred, a license becomes a constitutionally protected property interest.[13] *Illinois v. Batchelder*, 463 U.S. 1112, 1116–17 (1983); *Mackey v. Montrym,* 443 U.S. 1, 10 (1979); *Dixon v. Love*, 431 U.S. 105, 112 (1977); *Bell*, 402 U.S. at 539.

## B. Due Process Analysis

Accepting that a driver's license is a protected property interest, the issue becomes "what process is due to protect against erroneous deprivation of that interest." *Batchelder*, 463 U.S. at 1116–17 (citing *Mackey*, 443 U.S. at 10). Due process encompasses the opportunity to be heard at a meaningful time and in a meaningful manner. *Barry v. Barchi*, 443 U.S. 55, 66 (1979); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *see Evans v. Takao*, 74 Haw. 267, 282, 842 P.2d 255, 262 (1992); *Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976); *see Evans*, 74 Haw. at 282, 842 P.2d at 262; *Sandy Beach*, 70 Haw. at 378, 773 P.2d at 261.

The appropriate process due in a given situation:

requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the proce-

---

[13] Because a driver's license is a constitutionally protected interest, we need not consider whether, as argued by Appellants, reputation interests are also constitutionally protected interests.

dures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the government's interest, including the function involved and the fiscal or administrative burdens that the additional procedures would entail.

*Mathews*, 424 U.S. at 334–35; *see Sandy Beach*, 70 Haw. at 378, 773 P.2d at 261, and *Silver v. Castle Memorial Hospital*, 53 Haw. 475, 484, 497 P.2d 564, 571, *cert. denied*, 409 U.S. 1048 (1972), *and reh'g denied*, 409 U.S. 1131 (1973).

In *Love*, the United States Supreme Court reviewed the authority of the Secretary of State of Illinois to suspend or revoke a license without a preliminary hearing. The statute required the Secretary to provide written notice of the discretionary suspension but did not require a presuspension hearing. *Love*, 431 U.S. at 109–10. A hearing, however, was available "as early as practical" after the suspension. *Id.* at 110. The United States Supreme Court, using the *Mathews* analysis, found that the revocation procedures were sufficient to defeat the appellant's due process claim. *Id.* at 112–15.

In *Mackey*, the United States Supreme Court examined a Massachusetts statute that provided for the immediate ninety–day suspension of a driver's license when the driver refused to take a breath test after being arrested for DUI. The revocation was subject to an immediate review by the Registrar, but no hearing was provided. *Mackey*, 443 U.S. at 3–5. An aggrieved driver had the right to appeal an adverse decision of the Registrar to the Board of Appeals, but the appeal did not stay the revocation. *Id.* at 6 n.6. Upon request, the decision of the Board was subject to judicial review. *Id.* at 10.

The Court used the *Mathews* analysis to uphold the Massachusetts administrative revocation program and followed its decision in *Love* on the basis that *Mackey*, like *Love*, involved "a statutory scheme for administrative suspension of a driver's license for statutorily defined cause without a presuspension hearing." *Id.* at 11. In analyzing the *Mathews* factors, the Court stated, "[n]either the nature nor the weight of the private interest involved in this case compels a result contrary to that reached in *Love*." *Id.* at 12. Thus, "[i]n summary, [the court] conclude[d] here, as in *Love*, that the risk of error inherent in the presuspension procedures . . . is not so substantial . . . as to require [it] to depart from the 'ordinary principle' that 'something less than an evidentiary hearing is sufficient . . . .'" *Id.* at 17 (citation omitted). The court, however "conclude[d], as [it] did in *Love*, that the compelling interest in highway safety justifies . . . making a summary suspension effective pending the outcome of the prompt postsuspension hearing available." *Id.* at 19.

In *Batchelder*, the United States Supreme Court again followed the *Mathews* analysis in its examination of Illinois' administrative license revocation scheme. The Court compared the Illinois provisions with those involved in the *Mackey* case and determined that the statute, providing a presuspension hearing, gave even greater due process protection than was provided in *Mackey*. The Court held that the *Mathews* analysis required an affirmation of the validity of the Illinois statute.

*Love*, *Mackey*, and *Batchelder* analyzed license revocation and suspension statutes within the *Mathews* framework; therefore, it is within this framework that we analyze the constitutionality of Hawai'i's Administrative Revocation Program.

## C. Hawai'i's Administrative Revocation Program

### 1.  Private interest affected

When examining the private interest affected, we must consider not only the interest itself, but also "[t]he duration of any potentially wrongful deprivation of a property interest." *Batchelder*, 463 U.S. at 1117.  Here, the private interest affected is the right to drive, and Appellants face potential economic hardship and personal inconvenience if their licenses are revoked.  The nature of Appellants' interests, however, "is not so great as to require us 'to depart from the ordinary principle . . . that something less than [a predeprivation] evidentiary hearing is sufficient . . . .' " *Love*, 431 U.S. at 113 (citing *Mathews*, 424 U.S. at 343); *see also Mackey*, 443 U.S. at 13.

We also consider the possible length of deprivation.  Pursuant to HRS § 291–4(b)(1)(B) (Supp. 1992), the first DUI conviction mandates the court to impose a ninety-day license suspension.  In *Mackey*, the Massachusetts statute provided a ninety–day suspension, while in *Love*, Illinois permitted a one–year suspension with the potential for an indefinite license revocation.  No greater deprivation is possible in the instant cases under Hawai'i law.

Furthermore, if an arrestee submits to a blood or breath test and has no previous alcohol enforcement contacts, HRS § 286–264 provides that a conditional permit may be issued at the administrative hearing.  The considerations pertinent to the grant of a conditional permit include employment needs and transportation to substance abuse treatment facilities.  Thus, the allowance of a conditional permit provides possible relief for those who would be most harmed by a loss of license.

Although we recognize the importance of the interest at stake, we conclude that the existing statutory proce-

dures adequately protect citizens from the possibility of wrongful license suspensions. If a wrongful suspension were occasioned at the administrative level, timely judicial review is available to correct any deficiencies in the process.

The United States Supreme Court has upheld license revocation programs that provide less process than does Hawai'i's program. In *Love* and *Mackey*, arrestees received no hearing prior to license suspension. In accord with the United States Supreme Court's assessment in *Batchelder*, we note that the Hawai'i Administrative Revocation Program "clearly grants a driver the right to have a hearing before his license is suspended. Thus, [Appellants] can seek no solace in the first step of the [*Mathews*] analysis." ***Batchelder***, 463 U.S. at 1118.

## 2. Risk of erroneous deprivation

To examine the risk of erroneous deprivation, we briefly review the procedure set out in the Administrative Revocation Program. After the arrest, notice of revocation, and issuance of a temporary license by the police, an administrative review occurs. The arrestee may provide the reviewing officer with written evidence and then request an administrative hearing upon revocation of his license by the reviewing officer. At the administrative hearing, the arrestee may introduce evidence and subpoena those who provided statements. Both the administrative review and hearing occur before license revocation becomes effective. Judicial review, if requested, is not guaranteed to occur before a license is suspended and, in practice, ordinarily occurs after the expiration of the thirty–day permit.

By contrast, in *Mackey* and *Love*, no presuspension, evidentiary hearing was required. Such a hearing was

available only after license revocation, followed in turn by discretionary judicial review. In *Batchelder*, an evidentiary hearing was held prior to license revocation.

The Court in *Mackey* stated that *same–day* review gave the arrestee the opportunity to "tell his side of the story . . . to obtain correction of clerical errors, and to seek prompt resolution of any factual disputes he raises as to the accuracy of the officer's report . . . ." *Mackey*, 443 U.S. at 15.

> And, when prompt post deprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be. *See, e.g., Barry v. Barchi*, 443 U.S. 55 (1979), 64–65; *Mathews v. Eldridge*, 424 U.S. at 334.

*Mackey*, 443 U.S. at 13. The fact that Hawai'i's procedure provides for a *predeprivation* review and hearing "abundantly weights this second part of the [*Mathews*] analysis in favor of the constitutionality of [the Revocation Program]." *Batchelder*, 463 U.S. at 1118.[14] Hawai'i's procedure allows the arrestee to correct any mistakes that may have been made by the director as well as to challenge the

---

[14] The fact that *Batchelder* and *Mackey* deal with revocations for refusing to submit to a breath or blood test does not deter us from utilizing their analyses. In both cases, the United States Supreme Court examined the procedures followed for the revocation and suspension of driver's licenses. The fact that licenses were suspended for failure to submit to a test rather than for driving under the influence is inconsequential.

reports and statements presented against him. *See* HRS §§ 286–258(f) and 259(d). The arrestee is also given the opportunity to confront those who submitted statements and reports. *Id.* These procedures provide a reasonable and reliable basis for ascertaining the facts.

Due process does not require error–free determinations. *Mackey*, 443 U.S. at 13. Because the United States Supreme Court has found that presuspension hearings are not required for driver's license suspensions, Hawai'i's procedures, which provide for such hearings, sufficiently assure reliable results and provide adequate due process. Further, judicial review prior to the revocation "would be unlikely to have significant value in reducing the number of erroneous deprivations." *Love*, 431 U.S. at 114.

Appellants complain that the administrative hearing is insufficient to provide due process of law because the hearing officer's review is limited in scope and the arrestee cannot raise constitutional issues for disposition. The hearing approved by the Supreme Court in *Batchelder* was presuspension and limited to whether reasonable grounds existed to arrest the driver and whether the driver was informed of the penalties for refusing the breath test. *Batchelder*, 463 U.S. at 1114. Here, although the hearing officer cannot pass upon the constitutionality of the statute directly,[15] he or she determines the validity of basic facts that set the stage for the court to consider constitutionally significant matters on review. For example, the hearing officer determines whether reasonable suspicion and probable cause existed, whether

---

[15] An administrative agency "generally lacks power to pass upon the constitutionality of a statute." *HOH Corp. v. Motor Vehicle Industry Licensing Board*, 69 Haw. 135, 141, 736 P.2d 1271, 1275 (1987).

the arrestee was properly informed of the procedures, and whether proper evidence exists for the revocation, thereby deciding matters that will directly affect and perhaps determine the arrestee's constitutional claims.

The legislature has chosen to provide an arrestee with an administrative review and hearing prior to the revocation of his or her license. These procedures provide sufficiently reliable results to protect against erroneous revocations and satisfy due process concerns.

### 3.   Governmental interest

The third part of the *Mathews* test consists of an evaluation of the governmental interest involved. In DUI cases, public safety is the main governmental concern. "States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled foodstuffs." *Mackey*, 443 U.S. at 17 (citations omitted).

The Administrative Revocation Program allows the State to achieve these goals without overburdening individuals or the judicial system. Requiring presuspension judicial review would greatly delay valid revocations without a concomitant benefit to the system, because most errors can be rectified through the administrative process. Presuspension judicial hearings or an automatic stay of revocation pending judicial review would likewise increase the fiscal and administrative burden on the courts, because arrestees would be encouraged to request judicial intervention simply to retain their licenses.

We conclude that the additional safeguard of presuspension judicial intervention is neither necessary as a component of due process nor required to exonerate the legitimate interests of arrestees when weighed

against the strong public policy of removing drunken drivers from our highways.

## 4. Balancing the factors

As we have stated, though constitutionally protected, one's driver's license can be revoked where due process has been provided. The administrative review and hearing processes minimize the chance of an erroneous deprivation by providing meaningful opportunities to correct errors and dispose of challenges, helping to insure a reliable result. Finally, the governmental interest in public safety and curbing drunk driving is an important interest properly advanced by the Administrative Revocation Program.

Appellants claim that the revocation process invalidly shifts the burden of proof to the arrestee. This argument overlooks the fact that the arrestee does not have to present any evidence until the reviewing officer determines that sufficient grounds for the revocation exist. Thus, the police have the initial burden to prove that: (1) reasonable suspicion existed to stop the vehicle; (2) probable cause existed to believe the arrestee was driving under the influence; and (3) by a preponderance of the evidence, the arrestee did in fact drive under the influence. Only after these burdens have been met does the arrestee carry any burden of contrary proof.

Appellants further complain that the Judiciary acts both as prosecutor and adjudicator in the revocation process, thus depriving Appellants of procedural due process and fairness. The reviewing and hearing officers, however, do not act as "prosecutors." Instead, they are decision makers who review the evidence. The fact that the arrestee or witness may be questioned by the hearing officer should not suggest that he or she is a "prosecutor"

any more than a judge's inquiry of a witness makes the judge a "prosecutor." The hearing officer is permitted to query witnesses in order to make a fully informed decision. Appellants have failed to show that the ADLRO officers have an interest in the outcome of the matter to "overcome the 'presumption of honesty and integrity' that attaches by virtue of [their] office." *Cf. **Sifagaloa v. Board of Trustees of the Employees' Retirement System of the State of Hawai'i***, 74 Haw. 181, 193, 840 P.2d 367, 372 (1992) (citations omitted).

Following the United States Supreme Court, we hold that the interest in a driver's license is not so great that more than an administrative review and hearing are needed to comport with the requirements of due process. In *Batchelder*, the Court stated, "[a]gain, the fact that we upheld a more summary procedure in *Mackey* refutes the suggestion that the Illinois scheme runs afoul of the [*Mathews*] test." ***Batchelder***, 463 U.S. at 1118. An analogous situation exists here, justifying our holding that Hawai'i's Administrative Revocation Program does not offend the principles of *Mathews* and is, therefore, constitutional.

## V. The Revocation Program As Applied to Appellants

Appellants also argue that the Administrative Revocation Program was unconstitutionally applied to them, citing various points of error in the process. Some points are brought individually while others are common to all three Appellants. We address them now.

### A. Proper Documents

#### 1. Sworn statements

HRS § 286–257 requires that the following documents be forwarded to the ADLRO director: 1) the arrest report

and the sworn statement of the arresting officer; 2) the sworn statement of the person responsible for the maintenance of the breath testing equipment; and 3) the sworn statement of the person who conducted the test. HRS § 286–257(a)(1)–(3).[16]

Appellants argue that the sworn statements presented in their cases were not sworn "in the connotative sense" and should not be used as evidence against them. Appellants claim that the sworn statements were somehow defective because they were neither attested to before a third party, nor were the officers subject to penalties in the event they submitted false statements.

The statute requires *sworn statements*, not statements given under oath or even notarized statements. The lack of statutory language creating these additional requirements raises a presumption that a statement sworn to by the officer is sufficient. The three statements submitted in each of the Appellants' cases bore the signature of that person and the statement, "I, (officer's name), swear that the following is true and correct." The statute requires nothing more.

An examination of the use to which the statements are put strengthens our view that statements need not be notarized. The reviewing and hearing officers utilize the statements to determine the facts of the case. An arrestee may subpoena the police officers who submitted the statements to have them testify under oath. HRS § 286–259(g). Further, HRS § 710–1063 provides penalties for false statements:

---

[16] HRS § 286–257 also requires that a copy of the notice of administrative revocation issued to the arrestee, any driver's license taken from the arrestee, and a listing of any prior alcohol enforcement contacts involving the arrestee be submitted to the ADLRO director.

(1) A person commits the offense of unsworn falsification to authorities if, with an intent to mislead a public servant in the performance of his duty, he:

    (a) Makes any written statement, which he does not believe to be true, in . . . a record or report required by law to be submitted to any governmental agency;

    . . . .

(2) Unsworn falsification to authorities is a misdemeanor.

HRS § 710–1063 (1985).

Therefore, given the criminal penalty for making a false statement and the arrestee's ability to require the officer to testify under oath, we conclude that sufficient mechanisms exist to insure due process and fairness in the presentation of facts to ADLRO officers.

## 2. Complete police reports

Appellants argue that their license revocations should have been vacated because the *entire police report* was not submitted to the ADLRO. HRS § 286–257(a)–(b) requires that a copy of the *arrest* report and the sworn statement of the arresting officer be submitted to ADLRO director. These sections further provide that the report and statement should set forth facts establishing that: (1) reasonable suspicion existed for the stop; (2) probable cause existed to believe that the arrestee operated the vehicle while under the influence of intoxicating liquor; (3) the arrestee was informed of the sanctions for refusing to be tested for blood alcohol concentration; and (4) the arrestee refused or agreed to be tested. HRS § 286–257(a)–(b). Appellants claim that the arrest report required by the statute means the entire police report and not merely

the Offender–Based Transaction Statistics/Computerized Criminal History Arrest Report (OBTS/CCH) that the police submitted.

The law provides no statutory definition for the term "arrest report," and the legislative history fails to give us guidance. Our inquiry is whether the OBTS/CCH, along with the police officer's statement, is sufficient to establish the facts enumerated in HRS § 286–257.

The arresting officer's sworn statement, by itself, establishes the required facts. The statement is formatted to address each fact and to provide the reasons or supporting details for each. The OBTS/CCH supplements the sworn statement and includes objective data regarding the arrestee and the arrest, the charges against the arrestee, and the names of the police officers involved. The complete police report, which was included in Kernan's record, provides greater detail regarding the arrest and subsequent actions, but does not add any significant facts.

The reviewing and hearing officers do not need a complete police report to review and determine the elements required for revocation. Nevertheless, as a safeguard, the arrestee may, through the subpoena issued by the hearing officer, require the police officer to bring the complete police report to the administrative hearing.[17] *See* HRS § 286–259(d)(4). This allows the arrestee to introduce the police report at the hearing when conflicts or discrepancies exist between the report and the arrestee's version of the events.

---

[17] This would occur after the reviewing officer had revoked the arrestee's driver's license. The fact that the reviewing officer never considers the entire police report is inconsequential. The statute is satisfied if the reviewing officer has the OBTS/CCH.

Therefore, the OBTS/CCH, along with the arresting officer's statement, fulfill the requirements of HRS § 286–257. HRS § 286–257 does not require the complete police report.

## B. Transcripts

Allen argues that the transcript of his administrative hearing was not transcribed by a certified court reporter and that it was not properly certified.[18] "The general rule is that an issue which was not raised in the lower court will not be considered on appeal. An appellate court will deviate from this rule only when justice so requires." *Hong v. Kong*, 5 Haw. App. 174, 177, 683 P.2d 833, 837 (1984) (citations omitted); *see also* *Bertelmann v. Taas Assoc.*, 69 Haw. 95, 103, 735 P.2d 930, 935 (1987) ("A judgment will not ordinarily be reversed based on a theory an appellant failed to raise at the trial level unless justice so requires." (citing *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 56 Haw. 466, 540 P.2d 978 (1975))). Allen did not raise this issue below and has made no showing that the transcripts were inaccurate or that he was prejudiced by them. Therefore, we do not address this issue.

## C. Absence of Probable Cause

Kernan claims that he was illegally seized because the police officer ordered him out of his vehicle without cause in violation of *State v. Kim*, 68 Haw. 286, 711 P.2d 1291

---

[18] Allen claims that HRS chapter 606 and District Court Rules of Civil Procedure Rule 72(d)(1) require that transcripts entered into the record in district court be transcribed by a court reporter or certified by an appropriate person.

(1985). Thus, Kernan argues that the police officer's observations[19] made outside of the vehicle should be excluded under the exclusionary rule. Furthermore, he argues that no support for the finding of probable cause exists, because the district court discredited the hearing officer's finding of fact supporting probable cause.[20] Kernan's argument, which hinges on the determination that the seizure was illegal, concludes that his license revocation should be vacated because of the lack of evidence to support the finding that probable cause existed to believe that he drove while under the influence, as required by HRS § 286-259(e)(2).

Although there is no evidence that Kernan voluntarily exited the vehicle, there is similarly no evidence that he was ordered out.[21] At the ADLRO hearing, Kernan's attorney established that the police officer's observations were

---

[19] The police officer testified at the administrative hearing that he observed that Kernan was unsteady on his feet, had a strong odor of alcohol, and had red and watery eyes.

[20] The hearing officer, in his Findings of Fact, Conclusions of Law, and Decision, found that Kernan, "[w]ithout instruction from the police officer . . . came out of his vehicle. The officer then noted physical indicia displayed by the arrestee which were sufficient to cause the officer to reasonably conclude that the arrestee was under the influence of intoxicating liquor." The district court correctly determined that no evidence exists in the record to support the finding that Kernan exited his vehicle voluntarily. The fact that the officer noticed Kernan's physical condition after Kernan was outside of the car, however, is well established by the record.

[21] In his reply brief, Kernan argues that the district court found that he was ordered out of his vehicle by the police officer. The court found, however, that no evidence existed showing that Kernan exited voluntarily. The court made no determination that the officer ordered Kernan to exit the vehicle. The lack of evidence of a voluntary exit does not lead us irrefragably to the conclusion that Kernan was ordered out of the vehicle.

made after Kernan left the vehicle. The police officer, however, was never asked if he ordered Kernan out of the vehicle. Furthermore, Kernan failed to testify that he had been ordered from his vehicle.

If Kernan exited the vehicle voluntarily, the police officer's observations are admissible to establish probable cause. If, however, Kernan were ordered to exit the vehicle, the issue whether an illegal seizure occurred requires further discussion. For the following reasons, we hold that, under the facts and circumstances surrounding his arrest, even if Kernan had been ordered from his vehicle, such action was valid and his argument fails. Thus, whether Kernan was ordered out or exited the vehicle voluntarily is not legally significant.

Case law establishes that a vehicular stop followed by police questioning of the driver constitutes a seizure for purposes of the fourth and fourteenth amendments. *State v. Wyatt*, 67 Haw. 293, 299, 687 P.2d 544, 549 (1984). The United States Supreme Court has ruled that traffic stops are valid without probable cause due to the limited nature of the detention. *Delaware v. Prouse*, 440 U.S. 648, 654 (1979); *see also Wyatt*, 67 Haw. at 299–300, 687 P.2d at 549. Key to the analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Thus, given sufficient articulable facts, a police officer may stop and question a driver without probable cause. HRS § 286–255 only requires the traffic stop be supported by "reasonable suspicion."

When a valid stop has occurred, the issue becomes at what point may a police officer legally order a driver out of his or her vehicle. In *Kim*, this court ruled that Kim

was illegally seized because the police officer did not have a sufficient basis to order him out of the vehicle. *Kim*, 68 Haw. at 291, 711 P.2d at 1294. In that case, a police officer stopped Kim for driving through a red light. *Id.* at 288, 711 P.2d at 1293. The officer then asked Kim to step out of the vehicle, based solely on his observations of the traffic violation. *Id.* The court held that the police must have "at least a *reasonable basis of specific articulable facts to believe a crime has been committed to order a   driver out of a vehicle* after a traffic stop." *Id.* at 290, 711 P.2d at 1294 (emphasis added).[22] Ordering the driver to exit the vehicle is an extension of the seizure that must be accompanied by sufficient facts to support the officer's action. Probable cause is, therefore, not required to support an exit order.[23]

In *Kim*, this court did not attempt to specify the facts that could be used by an officer to develop reasonable

---

[22] A traffic violation in and of itself does not supply reasonable articulable facts to support an order to exit the vehicle. *Kim* distinguished *Wyatt* and *State v. Kuba*, 68 Haw. 184, 706 P.2d 1305 (1985), stating that in those cases, the police had articulable facts to justify ordering the drivers out of their vehicles. *Id.* at 290–91. Wyatt was stopped for driving without her headlights illuminated. In conversation with the officer, Wyatt admitted to have been drinking earlier. She was then asked to exit her car. Kuba was observed driving at five miles per hour while straddling two lanes of traffic. After a traffic stop, Kuba was asked for his license. Upon noticing Kuba's apparent inebriated condition, the officer asked Kuba to step out of the vehicle.

[23] Usually, the police administer a field sobriety test consisting of specific procedures when a driver has been stopped as a DUI suspect. If a driver does not exit voluntarily, the police must order him or her out of the vehicle even though probable cause to arrest may not have been established. Should the suspect fail the test, an arrest will ensue. Thus, it is the test failure that provides the police with probable cause to arrest. We do not require the police to have probable cause to arrest prior to the administration of the field sobriety test because such a requirement unduly burdens law enforcement.

suspicion of criminal activity. Although a motorist's disregard of a red light was insufficient, *Kim* did not prohibit police officers from using traffic violations as a partial basis for suspecting criminal activity. Furthermore, *Kim* did not require that police observe a motorist to display certain alcohol specific traits, such as blood–shot eyes, slurred speech, or alcoholic breath, in order to support an officer's reasonable belief that a crime had been committed. *Kim* simply provides that the police must have sufficient facts to believe that a crime has been committed before requiring a driver to exit his or her vehicle. *Id.*

In analyzing the reasonableness of the belief that a crime has been committed, the totality of circumstances, including the time, place, and length of detention must be considered. **State v. Paahana**, 66 Haw. 499, 666 P.2d 592 (1983); **State v. Melemai**, 64 Haw. 479, 643 P.2d 541 (1982).

In the instant case, as required by *Kim*, the police officer observed specific articulable facts that formed his reasonable belief that the crime of DUI was being committed. At 2:00 a.m., the officer observed Kernan driving 45 miles per hour in a 25 miles per hour zone while weaving out of his traffic lane and into the oncoming traffic lanes.[24] These traffic violations and the totality of the circumstances surrounding them provided the officer with a reasonable factual basis to believe that the crime of DUI was being committed. Without question, the traffic stop was justified and, pursuant to *Kim*, we conclude that the officer was permitted to invite Kernan to exit his vehicle for further investigation.

---

[24] Kernan was arrested and charged with DUI, speeding, and weaving in violation of HRS §§ 291–4 (Supp 1992), 291C–102 (1985), and 291C–38(c) (1985), respectively.

The facts in *Kim* differ from the instant case because the police officer in *Kim* possessed insufficient facts to form the reasonable belief that Kim was engaged in any criminal activity justifying an exit order. The simple disregard of a red light by a driver provided an insufficient basis for the officer to reasonably conclude that a crime had been committed. The instant facts, on the other hand, satisfy the *Kim* test. Therefore, whether Kernan was ordered out or voluntarily exited his vehicle, the officer's ensuing observations of his physical condition were properly utilized by the hearing officer to satisfy the requirement of HRS § 286–259(e)(2) that probable cause existed to believe that Kernan drove while under the influence.[25]

### D. **Lack of Standing**

Finally, the State claims that Stewart does not have standing to challenge the constitutionality of the statute because his license was already suspended when he was arrested. The State argues that Stewart was not harmed by the revocation process because no evidence existed that the duration of his suspension was enhanced in any respect. Because his license was already suspended, however, Stewart could have suffered revocation for a year instead of merely ninety–days.[26] Thus, Stewart was suffi-

---

[25] Given our holding, we do not reach the issue of whether the exclusionary rule would apply to civil administrative proceedings such as this.

[26] HRS § 286–261 (Supp. 1992) provides in pertinent part:

. . . .

    (b) The periods of administrative revocation which may be imposed under this part are as follows:

        (1) Three months, if the arrestee's driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest;

ciently aggrieved to have standing to challenge the constitutionality of the administrative revocation program.

## VI. **Conclusion**

We hold that HRS chapter 286 Part XIV, the Administrative Revocation of Driver's License law, is constitutional because an arrestee's due process rights are fully protected. Further, the Administrative Revocation Program was applied in a constitutional manner to each Appellant.

Affirmed.

*Arthur E. Ross* for plaintiffs–appellants.

*Edwin L. Baker*, Deputy Attorney General, for respondent–appellee.

---

(2)   One year if the arrestee's driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest[.]