## JAY DEE PENN, Plaintiff-Appellant, *v.* TRANSPORTATION LEASE HAWAII, LTD., Defendant-Appellee

NO. 6877

CIVIL NO. 51906

JULY 2, 1981

HAYASHI, C.J., BURNS, J. AND
CIRCUIT JUDGE CHANG IN PLACE OF
ASSOCIATE JUDGE PADGETT, DISQUALIFIED

## OPINION OF THE COURT BY BURNS, J.

This is an appeal by Plaintiff-Appellant Jay Dee Penn from an interlocutory permanent injunction requiring him to deliver to Defendant-Appellee Transportation Lease Hawaii, Ltd. (herein "Translease"), certain automobiles which he was leasing from Translease. We affirm the lower court's issuance of the injunction.

In 1973, Penn purchased 200 Datsuns. By agreement dated October 23, 1975, Penn and Translease agreed that Translease would purchase the Datsuns from Penn by assuming Penn's $60,000 debt due THC Financial; that Penn would lease the Datsuns from Translease; and that Penn would lease an additional 100 automobiles from Translease. Penn's performance of its obligations under the October 23, 1975 agreement was guaranteed by Dr. Edmund Wong.

After effectuation of the October 23, 1975 agreement, Penn leased an additional 36 automobiles from Translease. Dr. Wong did not guarantee Penn's performance of its obligations with respect to these 36 automobiles.

Penn fell behind in his payments due, and on April 19, 1977, signed and delivered to Translease's general manager a promissory note in favor of Translease in the principal amount of $77,506.09. In Penn's view, the note satisfied his delinquency. In Translease's view, the note was ineffective unless and until Dr. Wong guaranteed it, which he did not do.

Unsatisfied by the note, Translease filed suit against Penn for, *inter alia,* an order mandating the return of all of the leased automobiles.

Thereafter, the parties, who were each represented by counsel, entered into a "Settlement Agreement" dated June 22, 1977, which provided, *inter alia:*

3. The present $77,506.09 Promissory Note will be cancelled and replaced by two (2) separate Promissory Notes.***

a. One note . . . will contain the amount of the arrearages for the one hundred (100) Aloha Motors vehicles guaranteed by Wong under the letter agreement.***

b. The second . . . will cover the 36 vehicles which are in excess of those referred to in the letter agreement.***

7. On execution of this agreement, the present litigation . . . will be dismissed without prejudice. However, Penn agrees that in the event of any material default under this agreement, he will not contest the immediate issuance of a temporary restraining order . . . requiring the return . . . of all . . . vehicles. . . . It is understood . . . that . . . any failure to pay which exceeds ten (10) days shall be presumed to be a material default.

8. In the event of a default by Penn, Penn shall upon demand by [Translease] immediately surrender and deliver all remaining unsold vehicles . . . to [Translease].***

Dr. Wong guaranteed payment of only the first note.

On June 27, 1977, five days after the Settlement Agreement, Penn commenced an action against Translease seeking a judgment declaring the April 19, 1977 note valid and the June 22, 1977 Settlement Agreement invalid because it lacked consideration, was the result of coercion and was made under duress.

Translease responded with a motion for a preliminary injunction requiring Penn to deliver all of the automobiles to Translease. After hearings on the motion, the trial court found Penn to be in default under the lease and issued a permanent injunction requiring Penn to deliver to Translease all automobiles covered in the June 22, 1977 Settlement Agreement not including the 200 Datsuns.

Penn appealed. Although Penn's complaint was unresolved at the time the notice of appeal was filed and the trial court was not asked to and did not certify an interlocutory appeal, we have jurisdiction to consider the appeal of the injunction because it requires immediate execution of a command that property be delivered to the appellant's adversary, and the losing party would be subjected to irreparable injury if appellate review had to wait the final outcome of the litigation. *Forgay v. Conrad,* 47 U.S. 201 (1848); 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3910, at 453 *et seq.* (1976); *Sturkie v. Han,* 2 Haw. App. 140, 627 P.2d 296 (1981).

Penn first contends that the lower court erred in ruling as a matter of law that no matter what part Translease's suit played in inducing Penn to enter into the June 22, 1977 Settlement Agreement, Penn could not use the pressure caused by the suit as a basis for the defense of duress. We agree with the lower court.

There are differing views on what kind of duress creates a voidable contract. Professor Williston says that the alleged pressure

must be wrongful. In his view, a threat to bring a civil action or to resort to remedies available under a contract is not wrongful, but if a threat is made with a consciousness that there is no real right of action and the purpose is plainly coercive, a contract induced thereby is voidable. 13 WILLISTON ON CONTRACTS, 3d Ed. § 1606 at 671, *et seq.* (1976).

According to the Restatement, the general rule is that where a party's manifestation of assent is induced by an improper threat that leaves him no reasonable alternative, the contract is voidable by that party. RESTATEMENT (SECOND) CONTRACTS § 317 (1977).

We hesitate to adopt a rule premised too much upon an examination of perceptions and motives. We prefer and therefore apply the Restatement's rule with its added inquiry into the availability of a reasonable alternative.

Under this rule, Translease's suit would probably have been improper if the April 19, 1977 note was effective. However, on the basis of substantial evidence, the lower court found that the note was not to be effective until guaranteed by Dr. Wong. Since Dr. Wong did not guarantee it, it was ineffective.

Further, even if the note was effective and the suit was improper, Penn had a reasonable alternative to succumbing and failed to take advantage of it. The pressure on him was caused by Translease's request for an order mandating the return of all of the leased automobiles. Penn had the opportunity to oppose this request in court before the issuance of the order. The court then would have determined whether the pressure was proper or not and whether Translease would be allowed to continue it.

Penn next contends that the court erred in finding that he breached the June 22, 1977 Settlement Agreement. We perceive no merit in this contention. The trial court's finding that Penn was "in material default in making the payments required by said agreement" is not clearly erroneous and conclusively establishes that Penn breached the agreement.

Finally, Penn contends that the trial court erred in issuing the injunction because there was no showing of irreparable harm. We hold that there was a sufficient showing of irreparable harm.

In reviewing this issue we note that: (1) the power to issue an injunction is discretionary, 42 AM. JUR. 2d *Injunctions* § 24 (1959);

and (2) the historical limitations on the injunctive remedy are fundamentally questions of policy which are being re-evaluated in light of the modern merger of law and equity, *Kleinjans v. Lombardi,* 52 Haw. 427, 478 P.2d 320 (1970).

The modern test for interlocutory injunctive relief is threefold: (1) Is the party seeking the injunction likely to prevail on the merits? (2) Does the balance of irreparable[1] damage favor issuance of an interlocutory injunction? (3) To the extent that the public interest is involved, does it support granting the injunction? *Life of the Land v. Ariyoshi,* 59 Haw. 156, 577 P.2d 1116 (1978).

The more the balance of irreparable damage favors issuance of the injunction, the less the party seeking the injunction has to show the likelihood of his success on the merits. *Fox Valley Harvestore v. A. O. Smith Harvestore Prod.,* 545 F.2d 1096 (7th Cir. 1976); *Benda v. Grand Lodge of Intern. Ass'n, Etc.,* 584 F.2d 308 (9th Cir. 1978). Likewise, the greater the probability the party seeking the injunction is likely to prevail on the merits, the less he has to show that the balance of irreparable damage favors issuance of the injunction.

Where, as in this case, property rights are in dispute, the general rule is that the interlocutory injunctions should not be issued to take property out of possession of one person to put it in possession of another; however, when necessary to protect legal rights and to prevent irreparable mischief, modern equity jurisprudence permits an exception to the rule. 42 AM. JUR. 2d *Injunctions* § 79 (1969).

Here, Penn leased autos from Translease and when Penn became delinquent in payments due, Translease sued for, *inter alia,* an order mandating return of the automobiles. Instead of opposing Translease's request in court, Penn induced Translease to terminate its suit without prejudice by entering into a settlement agreement. In the Settlement Agreement, Penn agreed that in the event of his breach thereof, he would not contest the immediate issuance of an order requiring the return of all automobiles and he would, upon demand, immediately deliver all automobiles to Translease. The probability of Translease's success on the merits was so great it had a relatively small burden to show that the balance of irreparable dam-

---

[1] Injury is irreparable where it is of such a character that a fair and reasonable redress may not be had in a court of law. 42 AM. JUR 2d *Injunctions* § 49 (1969); *Klausmeyer v. Makaha V. F., Ltd., et al.,* 41 Haw. 287 (1956).

age favored issuance of the injunction. Besides, in granting the injunction, the lower court was merely requiring Penn to honor his promises made in settlement of the prior suit. In doing so, the court was protecting legal rights and preventing irreparable mischief. We find no abuse of discretion in its action.

Affirmed.

*Paul E. Di Bianco* for plaintiff-appellant.

*Paul H. Sato (Naomi Sakamoto* on the brief) *(Fujiyama, Duffy & Fujiyama* of counsel) for defendant-appellee.