**GEOTHERMAL RESOURCE GROUP, INC., a Nevada Corp., Plaintiff,**

v.

**PUNA GEOTHERMAL VENTURE, a Hawaii general partnership, Defendant.**

**Civ. No. 91000330ACK/KSC.**

United States District Court, D. Hawai'i.

Sept. 20, 2001.

Diana L. Van De Car, Hilo, HI, for plaintiff.

Patricia M. NaPier, Joachim P. Cox, Jill S.M. Baldemor, Goodsill, Anderson Quinn & Stifel, Honolulu, HI, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

KAY, District Judge.

### BACKGROUND

This lawsuit involves a contract dispute between Geothermal Resource Group, Inc. ("Plaintiff") and Puna Geothermal Venture ("Defendant"). Since the inception of Defendant's geothermal power plant in 1993 until this dispute arose in October of 1999, the parties have enjoyed a relatively harmonious working relationship.[1] See Complaint at ¶ 5, 17.

The instant dispute arises from the following alleged circumstances. In January of 1999, Plaintiff orally agreed to provide "consulting drilling engineering services" in conjunction with the reworking of two injection wells and the drilling of a new production well at Defendant's geothermal power plant ("resource enhancement project"). See id. at ¶ 16. Approximately seven months into the project, in September of 1999, Defendants coerced Plaintiff into signing a written contract[2] ("Master Work Agreement"). See id. at ¶ 14. One month after Plaintiff signed the contract, in October of 1999, Defendants stopped paying for Plaintiff's services. See id. at ¶ 17. After a series of delays and incurring cost in excess of the original budget, Plaintiff completed work on the resource enhancement project in January of 2000. See id.

■ On April 12, 2001, Plaintiff filed a Complaint in the Third Circuit Court of the State of Hawaii that set forth the following claims: (1) breach of the original consulting agreement, (2) breach of the master work agreement, (3) promissory estoppel, and (4) unjust enrichment. On June 20, 2001 Defendant removed the action to federal court.[3] On May 21, 2001

1. As this is a Motion to Dismiss whereunder the Court must accept the allegations of the Complaint as true and view them in a light most favorable to Plaintiff, the Court in this background section is simply reciting some of the allegations in the Complaint.

2. Defendant contends that both parties had always contemplated formalizing the oral agreement and that the written contract merely documented and did not change the terms of the oral agreement that Plaintiff had performed for the previous seven months.

3. Defendant, a Hawaii general partnership, did not meet the removal requirements of 28 U.S.C. Section 1441(b) in that Defendant is a citizen of the state in which the complaint was filed. Although the Ninth Circuit does not appear to have addressed this issue directly, "the majority of courts have held that a defendant's residency in the forum state is a waivable procedural defect." Ravens Metal Products, Inc. v. Wilson, 816 F.Supp. 427, 428 (S.D.W.Va.) (citing In re Shell Oil Co., 932 F.2d 1518, 1522–23 (5th Cir.1991), cert. denied, 502 U.S. 1049, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992), Hartford Accident & In-

Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 12(b)(6) arguing that Hawaii Revised Statutes ("H.R.S.") Section 444, governing contractors, precludes Plaintiff from seeking compensation for work completed on the resource enhancement project. Plaintiff filed an Opposition on August 28, 2001 to which Defendant replied on September 6, 2001. The Court heard oral argument on September 17, 2001.

## STANDARD

### I. MOTION TO DISMISS

Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (emphasis added).

## DISCUSSION

Defendant asserts that H.R.S. Section 444 bars Plaintiff from pursuing this lawsuit because Plaintiff was an un-licensed "contractor" with respect to the resource enhancement project. Plaintiff does not allege having held any type of license. Instead, Plaintiff contends that it acted as a "professional engineer" such that H.R.S. Section 464 governs and Section 444 is inapplicable.

The critical distinction between Section 444 (Contractors) and Section 464 (Profes-

*dem. Co. v. Costa Lines Cargo Servs.*, 903 F.2d 352, 358–60 (5th Cir.1990), *Farm Constr. Serv., Inc. v. Fudge*, 831 F.2d 18, 21–22 (1st Cir.1987) (further citations omitted)); *see also Korea Exch. Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir.1995); *Hurley v. Motor Coach Indus. Inc.*, 222 F.3d 377, 379–80 (7th

Cir.2000), *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 704–06, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). Thus, because 28 U.S.C. Section 1441(d) required Plaintiff to file a motion to remand within 30 days of removal to the federal district court, Plaintiff is deemed to have waived the procedural defect.

sional Engineers) is that Section 444 includes a provision prohibiting un-licensed contractors from initiating a civil action to recover for work done. *See* Haw.Rev.Stat. § 444–22 (1998).[4] Section 464 does not include a like provision and arguably[5] would not preclude an un-licensed professional engineer from enforcing a valid contract. *C.f. Wilson v. Kealakekua Ranch, Ltd.*, 57 Haw. 124, 132, 551 P.2d 525 (1976). Moreover, Section 444 specifically exempts "professional engineer[s] acting solely within [their] professional capacity." Thus, the issues presented to the Court are (1) whether, based on the pleadings,[6] Plaintiff's involvement in the resource enhancement project was that of a "contractor," as defined by H.R.S. Section 444, or (2) whether, and to what extent, his involvement was that of a "professional engineer" as defined by H.R.S. Section 464.

### A. H.R.S. Sections 444 and 464

H.R.S. Section 444–1 defines "contractor" as:

> any person who by oneself or through others offers to undertake, or holds one-

self out as being able to undertake, or does undertake to alter, add to, subtract from, improve, enhance, or beautify any realty or construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation, or other structure, project, development, or improvement, or do any part thereof, including the erection of scaffolding or other structures or works in connection therewith.

Haw.Rev.Stat. § 444–1 (1998). Section 444–2 provides an exemption for "professional engineer[s] acting solely in [their] professional capacity." Although H.R.S. Section 444 does not define "professional capacity" or "professional engineer," according to Section 464, a "professional engineer" is:

> a person who holds oneself out as able to perform, or who does perform, any professional service such as consultation, investigation, evaluation, planning, design, or observation of construction or operation, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works,

---

4. H.R.S. Section 444–22, Civil Action, provides:

> The failure of any person to comply with any provision of this chapter shall prevent such person from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof in a civil action, if such person failed to obtain a license under this chapter prior to contracting for such work.

Haw.Rev.Stat. § 444–22 (1998).

5. Defendant does not appear to argue that H.R.S. Section 464 would bar Plaintiff from seeking recovery for failure to obtain an engineering license. *See* Reply at 5 (noting that H.R.S. Section 464 affords Plaintiff "relative safety").

6. Because this is a Motion to Dismiss, the Court will assess Plaintiff's involvement in the resource enhancement project based on the

allegations in the Complaint. The Court declines to consider the affidavit of William Rickard, attached as exhibit A to Plaintiff's Opposition. Additionally, although the Court may consider the Master Work Agreement attached as Exhibit B to Defendant's Reply, *see Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998) (stating that "a district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading' ") (alteration in original), because Plaintiff alleges that the Master Work Agreement was the product of coercion and duress, and because the Court is obliged to accept these allegations as true, the provisions of the Agreement will not be referenced. *See Penn v. Transportation Lease Hawaii, Ltd.*, 2 Haw.App. 272, 275, 630 P.2d 646 (1981) (noting that "where a party's manifestation of assent is induced by an improper threat that leaves him no reasonable alternative, the contract is voidable by that party").

or projects, wherein the safeguarding of life, health, or property is concerned or involved, when such professional services requires the application of engineering principles and data.

Haw.Rev.Stat. § 464–1 (1998). The Hawaii Administrative Rules, which intend to clarify and implement H.R.S. Section 464, further define the following terms:

"consultation" is "meetings, discussions, written or verbal messages, reports, etc. involving scientific, aesthetic or technical information, facts, or advice for purposes of planning, designing, deciding, or locating construction or alteration of structures ... or projects";

"investigation" means "careful search, examination, inquiry or study to reveal or determine scientific, aesthetic, or technical information or facts for the planning, design, location, construction, or alteration of existing or proposed structures ... or projects";

"evaluation" is "careful search, examination, or inquiry to reveal, determine, or estimate the value, worth, merit, effect, efficiency, or practicability of planning, design, location, construction, or alteration of existing or proposed structures, buildings, works, processes, land areas, or projects";

"planning" means "careful search, examination, inquiry, study, and the formulation or execution of a statement, outline, draft, map, drawing, diagram, or picture arrangement, scheme, schedule, program, or procedure for locating, building, or altering existing or proposed buildings, structures ... or projects."

"design" means "any procedure which conveys the plan ... and nature of construction or alteration of existing or proposed buildings, structures, works, machines, processes, land areas, or projects";

"observation of construction" means "making visits to the site by a licensed engineer ... to observe the progress and quality of the executed work and to determine, in general, if the work is proceeding in accordance with the contract documents. It is not required that they make exhaustive or continuous on-site observations to check the quality or quantity or work nor is it intended that the engineer ... be responsible for construction means, methods, techniques, sequences, or procedures, or for safety precautions and programs in connection with the work."

Haw.Admin.R. §§ 16–115–1, 16–115–2 (2001). The licensing requirement of both statutes serves to protect the public from unfit, incompetent, and dishonest professionals and contractors. *See Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 130, 551 P.2d 525 (1976) (commenting on the purpose of H.R.S. Section 464); *Jones v. Phillipson,* 92 Hawaii 117, 125, 987 P.2d 1015 (Ct.App.1999) (commenting on the purpose of H.R.S. Section 444).

### B. Plaintiff's Involvement in the Project

Throughout the Complaint, Plaintiff characterizes its services as "consulting engineering services," "consulting drilling services," "engineering services," and "professional and technical services." Complaint at ¶ 5, 6, 17, 31, 32, 36, 37, 38. Beyond these generalizations, Plaintiff alleges that its "function was to manage the drilling aspects of the 'resource enhancement project.'" *Id.* at ¶ 7. Additionally, it appears that Plaintiff supervised a number of people that Defendant hired to partake in the construction of the wells, *see id.,* and managed the refurbishment of a used drilling rig. *Id.* at ¶ 8. In certain instances, Plaintiff "retained technical and professional personnel to oversee the drilling operations at the project site." *Id.* at ¶ 17. It also appears that Defendant employed a

drilling contractor and construction manager in connection with the resource enhancement project, *see id.* at ¶ 7 and 9, and that Plaintiff's duties included reporting cost and schedule projections to the construction manager. *Id.* at ¶ 11.

### C. Analysis

■ Defendant contends that Plaintiff's role in the supervision and management of the resource enhancement project renders it a "contractor" as defined by H.R.S. Section 444.[7] In opposition, Plaintiff argues that viewing the allegations in the light most favorable to Plaintiff and accepting the allegations as true, as the Court must do in a Motion to Dismiss, the Complaint sufficiently establishes that Plaintiff acted within the capacity of a "professional engineer" and therefore is entitled to pursue this action.

Plaintiff's involvement in the resource enhancement project appears to fall within H.R.S. Section 444–1's broad definition of "Contractor." Based on the allegations in the Complaint, Plaintiff not only undertook, but succeeded in reworking Defendant's injection wells and also contributed to the successful drilling of a new well. Complaint at ¶ 17. These actions would appear to constitute "adding to", "subtracting from" or "enhancing" realty and/or "altering" or "improving" a structure or project.

Despite the foregoing, H.R.S. Section 444–2 specifically exempts professional engineers acting solely within their professional capacity.[8] *See* Haw.Rev.Stat. § 444–2(5). Thus, the question becomes whether Plaintiff's involvement in the resource enhancement project was that of a "professional engineer."

The allegations in the Complaint set forth facts that when viewed in the light most favorable to Plaintiff establish that Plaintiff's role in the resource enhancement project may have been that of a "professional engineer." It appears from the Complaint that Plaintiff feasibly could have performed "professional services" such as "consultation," "investigation," "evaluation," "planning," "design," and "observation of construction." First, accepting the allegations as true, Plaintiff provided "consulting drilling services." *See* Complaint at ¶ 6. Second, it is not only plausible, but likely that re-work of the two existing wells and especially the production of a new well involved "investigation" (careful search and examination to determine scientific and technical information for planning and design purposes), "planning" (formulation of a schedule or procedure for altering projects), and "design" (procedure that conveys the plan and nature of the alteration of the project). *See* Haw.Admin.R. § 16–115–2. Third, Plaintiff "evaluated" in that it appraised Defendant's construction manager of cost

---

**7.** More specifically, Defendant proffers that Plaintiff should be classified as a "general engineering contractor" or a "specialty contractor." However, because both classifications are predicated upon qualification as a "contractor," *see* Haw.Rev.Stat. § 447–7(b) and (d) (1995) (stating "[a] general engineering contractor is a *contractor* whose principal contracting business ..." and "[a] specialty contractor is a *contractor* whose operations ...") (emphasis added), to fall within the purview of H.R.S. Section 444, Plaintiff's involvement in the resource enhancement pro-

ject must fit within Section 444–1's definition of "contractor."

**8.** At the hearing, Defendant acknowledged that Plaintiff can recover to the extent it rendered engineering services and that Plaintiff could amend the complaint to more definitively assert the engineering services provided. Additionally, though Defendant argued that Plaintiff acted as a contractor, it also conceded that Plaintiff provided some engineering services in the four months for which Defendant withheld payment.

projections associated with the resource enhancement project. *See id.* (stating that evaluation is "careful search to estimate the value, worth ... of alteration of existing or proposed structures ... or projects"). Last, it is feasible that Plaintiff's oversight and management of the drilling operations, *see* Complaint at ¶ 7, 17, constitutes "observation of construction." *See* Haw.Admin.R. § 16–115–2 (noting that observation of construction includes "observ[ation] [of] the progress and quality of the executed work...."). Therefore, Plaintiff's involvement in the resource enhancement project may have been that of a "professional engineer."

H.R.S. Section 444 does not require professional engineers acting solely in their professional capacity to possess a contractor's license. H.R.S. Section 444 is silent as to the definition of "professional capacity."[9] However, H.R.S. Section 464 and the Hawaii Administrative Rules Section 16–115–2 provide guidance. *See* Section A. Section 464 instructs that "professional service" includes "consultation, investigation, evaluation, planning, design, or observation of construction." The Administrative Rules further define these terms.

Based on the allegations in the Complaint, the Court cannot conclude with certainty that Plaintiff acted outside the scope of its "professional capacity." While the Court notes that the supervisory, management and procurement activities undertaken by Plaintiff do not fit squarely within the definitions of "consultation," "investi-

gation," "evaluation," "planning," "design," and/or "observation of construction,"[10] viewing the allegations in the light most favorable to Plaintiff, the Court finds that under a given set of facts,[11] these activities may lie somewhere on the perimeter of what constitutes "professional services." Thus, the Court cannot conclude that Plaintiff acted outside the scope of its professional capacity with respect to the resource enhancement project. *See De La Cruz*, 582 F.2d at 48 (instructing that the Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of Plaintiff's claims). Because it is feasible that Plaintiff's actions constituted that of a "professional engineer acting solely within [its] professional capacity," it is not apparent that H.R.S. Section 444 bars Plaintiff from bringing this lawsuit.

### CONCLUSION

■ Based on the foregoing, the Court DENIES Defendant's Motion to Dismiss. The Court recognizes that "[t]he purpose of [F.R.C.P.Rule 8 and] notice pleading is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *In re Marino*, 37 F.3d 1354, 1357 (9th Cir.1994) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Plaintiff's Complaint adequately puts Defendant on notice that Plaintiff makes a claim to recover for the engineering services it provided. It is the

---

9. H.R.S. Section 444 also does not define "professional engineer," however, because the term is defined by H.R.S. Section 464, the Court utilized Section 464's definition in its analysis. *See* Section C.2.

10. The Court is aware that the Hawaii Administrative Rules comment that engineers are not intended to "be responsible for construction means, methods, techniques, sequences, or procedures...."

11. For example, Plaintiff may establish that its managerial and supervisory duties involved determination of whether the work was proceeding in accordance with the contract documents and observation of the progress and quality of the executed work. Haw.Admin.R. § 16–115–2 (defining "observation of construction").

role of the factfinder to determine what services provided by Plaintiff fall within the definition of "engineering" as opposed to "contractor"–type services.

IT IS SO ORDERED.