110 P.3d 397

**KNG CORPORATION, Plaintiff–Appellee**

v.

**Carol KIM and Polo Trading, Inc.,
Defendants–Appellants.**

No. 25038.

Supreme Court of Hawai'i.

April 1, 2005.

Reconsideration Denied May 6, 2005.

Gary Victor Dubin, Honolulu, for defendants-appellants.

Carolyn Schnack (Paul M. Dold on the brief), for plaintiff-appellee.

Dorothy Sellers, Deputy Attorney General, on the brief, for Amicus Curiae State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, JJ., and Intermediate Court of Appeals Chief Judge BURNS, assigned by reason of vacancy.

Opinion of the Court by ACOBA, J.

We hold that, before ordering that a rent trust fund pursuant to Hawai'i Revised Statutes (HRS) § 666–21 (1993) be established, the district court of the first circuit (the court) should have held a hearing on the claim of Defendant–Appellant Carol Kim (Defendant), as tenant of outdoor spaces rented to her by Plaintiff–Appellee KNG Corporation (Plaintiff), that she was not al-

lowed to take possession of the said spaces. Because we remand the case, we conclude, for guidance of the court, that HRS § 666–21 does not violate the due process and equal protection clauses of the state and federal constitutions.

## I.

### A.

On October 12, 2001, Defendant, as President of Defendant–Appellant Polo Trading, Inc., entered into a commercial license agreement with KNG to purchase two vending carts [1] and sublease eight twenty-five-square-foot spaces for an outdoor vending cart operation.[2] The scheduled lease term affecting two of the carts was from November 15, 2001 to November 14, 2004; the scheduled lease term affecting the other six carts was from December 15, 2001 to November 30, 2004.[3]

Defendant allegedly paid to Plaintiff $48,000 as a premium for the outdoor spaces (the property), $21,000 to purchase the two existing carts, a security deposit of $20,833.20, and the initial month's rent of $18,229. A dispute arose as to the location of six of the carts and Defendant claims she was never given occupancy of the property.

### B.

On February 12, 2002, Plaintiff filed a complaint requesting $44,270.45 in unpaid rent and general excise taxes, a judgment giving Plaintiff possession of the property, and a writ of possession directing the sheriff or police officer to: (1) remove Defendant(s) from the property and all persons possessing the property through Defendant(s); (2) remove from the property all personal belongings of Defendant(s) and of any other person; and (3) put Plaintiff in possession of the property.

On the return date of the summons, February 25, 2002, Defendant entered a general denial to the complaint, the Honorable Judge David F. Fong presiding. At the hearing, Plaintiff orally moved for the establishment of a rent trust fund pursuant to HRS § 666–21 (1993). Defendant responded that the request should be done by written motion and that possession of the property had never been provided to Defendant, but the court granted the motion:

[Defense counsel]: Your Honor, we would oppose this. This should be done by motion and we haven't—

The Court: We have the authority—

[Defense counsel]:—actually—

The Court: We have the authority to order that. And if—there should be no prejudice as long as the rent is current.

[Defense counsel]: Well, there's an argument the rent has been paid. So there's an argument over—

The Court: For next month?

[Defense counsel]: No. The rent was paid in advance, but *possession was never provided. My clients have actually never taken possession.*

The Court: Well, I'm going to order the rent trust fund granted.

(Emphasis added.)

The court ordered Defendant to deposit $20,833.29 into the rent trust fund by 4:00

---

1. The remaining six carts were to be built by Defendant.

2. In other conditions of the agreement the parties assented to a license fee of eight percent per cart of monthly gross sales, with a contractually stipulated minimum of $1,950 per month per cart (a total of $15,600/mo.), plus Hawai'i general excise tax. The security deposit requirement in the contract was $20,833.20 per month, plus Hawai'i general excise tax. Defendant also agreed to pay $550 per month per cart (a total of $4400/mo.) for operating expenses, plus Hawai'i general excise tax for 2001.

Defendant agreed to purchase a coffee cart and crepe cart for $15,000 and $6,000, respectively. Defendant also agreed to pay $550 per month per cart (a total of $4400/mo.) for operating expenses, plus Hawai'i general excise tax for 2001. Additionally, paragraph M of the lease agreement states, "Tenant agrees to pay to Landlord as premium $6,000 per cart for eight carts for a total of $48,000.00, upon execution of License Agreement. Upon execution of License Agreement, this premium shall be non-refundable, regardless of Tenant occupancy or performance."

3. The actual lease states that the lease expiration date for Carts 1 through 6 is November 30, 2001, but since this termination date presents a logical conflict with the commencement date, it is presumed that Plaintiff's Amended Answering Brief, listing the lease expiration date as November 30, 2004, is correct.

p.m. on March 1, 2002 and by the first of each month thereafter until the dispute was concluded. The parties were to convene again on March 4, 2002 for a pre-trial hearing.

At the pre-trial hearing on March 4, 2002, Plaintiff's counsel stated that Defendant had failed to submit the monies into the rent trust fund and requested that the judgment for and writ of possession be issued effective that day. Defense counsel confirmed that payment had not been made and asserted that the establishment of the rent trust fund without a hearing was unconstitutional. The defense also indicated that an appeal with respect to the order of a rent trust fund would be filed, along with a demand for a jury trial with respect to damages.[4] The court apparently granted Plaintiff's request for writ of possession. On March 5, 2002, pursuant to HRS § 666–11 (1993),[5] the court entered a judgment for possession and a writ of possession in Plaintiff's favor.

Defendant appealed on April 4, 2002 from 1) the judgment for possession, and 2) the writ of possession.

## II.

### A.

Defendant claims that HRS § 666–21 violates the due process clause of section I of

the Fourteenth Amendment to the United States Constitution[6] and/or article I, section 5 of the Hawai'i State Constitution[7] in that it requires, as a precondition for trial, the payment of rent into a trust fund without (1) proof of any rent default, (2) prior notice and hearing, and (3) the posting of a bond by Plaintiff. Defendant further argues that the court failed to ascertain whether rent was actually owed and that HRS § 661–21 violates equal protection because it discriminates between renters who can afford rent trust fund deposits and those who cannot.

### B.

Initially, Plaintiff argues that Defendant's challenge to the court's grant of summary possession is moot because (1) Defendant asserted she was never in possession of the premises, (2) Defendant did not file a motion to stay the writ of possession or a motion for reconsideration, and (3) the writ of possession has been issued and executed. Plaintiff also contends that the court's action was constitutional because the rational basis test applies to HRS § 666–21 and the rational basis test is satisfied.

### C.

The Attorney General for the State of Hawai'i submitted an amicus curiae brief. The position of the State is that (1) the

---

4. The demand for trial by jury with respect to damages was transferred to the circuit court the day before the judgment for possession and writ of possession were entered.

5. HRS § 666–11 states as follows:

    **Judgment; writ of possession.** If it is proved to the satisfaction of the court that the plaintiff is entitled to the possession of the premises, the plaintiff shall have judgment for possession, and for the plaintiff's costs. Execution shall issue accordingly. The writ of possession shall issue to the sheriff or to a police officer of the circuit where the premises are situated, commanding the sheriff or police officer to remove all persons from the premises, and to put plaintiff, or the plaintiff's agent, into the full possession thereof.

6. Section 1 of the Fourteenth Amendment to the United States Constitution states:

    All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

7. Article I, section 5 of the Hawai'i State Constitution (Due Process and Equal Protection) states:

    No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Hawai'i appellate courts lack jurisdiction because of untimeliness of the appeal; (2) in this case, the exception announced in *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) [hereinafter *Forgay* doctrine], permits an order for payment into a rent trust fund; (3) the case is moot because execution of the writ of possession has ousted Defendant; and (4) HRS § 666–21 is constitutionally valid.

### III.

#### A.

■ As mentioned, the State first maintains that Defendant's appeal is untimely because the April 4, 2002 notice of appeal was not filed within thirty days of the "February 25, 2002 [rent trust fund] order." However, there is no February 25, 2002 rent trust fund order—there is merely the February 25, 2002 oral decision by the district judge. The oral decision is not an appealable order. *See* HRAP 4(a)(1) ("[T]he notice of appeal shall be filed within 30 days after entry of the judgment or appealable order."); HRAP 4(a)(5) ("A judgment or order is entered when it is filed in the office of the clerk of the court."). In civil cases before the district court, "[t]he filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry." District Court Rules of Civil Procedure Rule 58. *See* Hawai'i Rules of Civil Procedure Rule 58. As such, the February 25, 2002 oral decision regarding the rent trust fund is an interlocutory decision in the summary possession case that is reviewable on appeal from the judgment for possession. *See Pioneer Mill Co. v. Ward*, 34 Haw. 686, 694 (1938) (stating that an appeal from a final judgment "brings up for review all interlocutory orders not appealable directly as of right which deal with issues in the case" (citations omitted)).

#### B.

■ The State further contends that the *Forgay* doctrine does not provide a jurisdictional basis for this appeal because Defendant is appealing the February 25, 2002 rent trust fund decision and the *Forgay* doctrine does not apply to transfers of monies into a court fund. "The *Forgay* doctrine is an exception to the finality requirement for appeals and it allows an appellant to immediately appeal a judgment for execution upon property, even if all claims of the parties have not been finally resolved." *Ciesla v. Reddish*, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995). "Under the *Forgay–Conrad* rule, the lower court's order is treated as final for appeal purposes where the losing party would be subject to irreparable injury if appellate review had to await the final outcome of the litigation." *Bank of Hawaii v. Davis Radio Sales & Serv., Inc.*, 6 Haw.App. 469, 475 n. 10, 727 P.2d 419, 424 n. 10 (1986).

The State asserts that the *Forgay* doctrine should not be applied to the termination of a leasehold interest in commercial property because Defendant has an adequate remedy in money damages and, hence, there is no irreparable injury. However, the seminal Hawai'i case on the *Forgay* doctrine, *Penn v. Transp. Lease Hawaii, Ltd.*, 2 Haw.App. 272, 630 P.2d 646 (1981), involved termination of a leasehold interest in automobiles that was held to be appealable under *Forgay*.

#### C.

Plaintiff and the State finally contend that this appeal is moot because the writ of possession was executed and Defendant is not in possession of the subject premises. However, the agreement gave Defendant possession until November 14, 2004, with "one 3–year option to renew." *See Exit Co. Ltd. P'ship v. Airlines Capital Corp., Inc.*, 7 Haw.App. 363, 366, 766 P.2d 129, 131 (1988) (determining in a summary possession case that an appeal from a judgment for possession is moot where the appellant legally cannot regain possession of the subject premises, *i.e.*, the lease is "not subject to renewal or extension," should the judgment for possession be vacated by the appellate court). Hence, because there was an option to renew, this court has jurisdiction to review the case.[8]

---

8. Plaintiff's other arguments as to mootness, *see supra* page 76, 110 P.3d page 400, also fail for a similar reason. Defendant had possession of two spaces and sought possession of six others. The

## IV.

█ The purpose of a summary possession action is to place the landlord in possession of the subject premises. Pursuant to the summary possession statute,

[w]henever any lessee or tenant of any lands or tenements ... holds possession ... without right, after the termination of the tenancy, either by passage of time or by reason of any forfeiture, under the conditions or covenants in a lease, ... the person entitled to the premises may be restored to the *possession* thereof [pursuant to the summary proceeding provided in HRS chapter 666].

HRS § 666–1 (1993) (emphasis added). Accordingly, the "proceeding provided under HRS chapter 666 is not for the trial of title to land, but its primary purpose is the determination of the right to possession between the person claiming to be the landlord and one claiming to be his [or her] tenant." *Lum v. Sun*, 70 Haw. 288, 292–93, 769 P.2d 1091, 1094 (1989) (citing 3A G. Thompson, *Commentaries on the Modern Law of Real Property* § 1370, at 722 (J. Grimes Repl.1981) (footnote and brackets omitted)). "[T]he statutory proceeding described in HRS chapter 666 is meant to provide 'a remedy that enables the landlord to obtain possession of leased premises without suffering the delay, loss and expense to which ... [the landlord] might be subjected if he [or she] could only rely on the common law to remove a tenant who is wrongfully holding over his [or her] term.'" *Id.* (brackets omitted); *see also Kamaole Two Hui v. Aziz Enters., Inc.*, 9 Haw. App. 566, 572–73, 854 P.2d 232, 236 (1993). "At common law, one with the right to possession could bring an action for ejectment, a 'relatively slow, fairly complex, and substantially expensive procedure.'" *Lum*, 70 Haw. at 294 n. 5, 769 P.2d at 1095 n. 5 (quoting *Lindsey v. Normet*, 405 U.S. 56, 71, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (other citation omitted)). Thus, summary possession was an accelerated and economical means by which to regain possession.

failure to apply for a stay of the writ or for reconsideration would not moot the question of possession.

## V.

The rent trust fund is intended to maintain the status quo, continuing possession in the tenant so long as the tenant pays the agreed rent as it comes due. The rent trust fund provision, HRS § 666–21 states, in part:

(a) *At the request of either the tenant or the landlord in any court proceeding in which the payment or nonpayment of rent is in dispute,* the court shall order the tenant to deposit any disputed rent *as it becomes due* into the court as provided under subsection (c) ... provided that *the tenant shall not be required to deposit any rent where the tenant can show to the court's satisfaction that the rent has already been paid* to the landlord; .... *No deposit of rent* into the fund ordered under this section *shall affect the tenant's rights to assert either that payment of rent was made or that any grounds for nonpayment of rent exist* under this chapter.

(b) If the tenant is unable to comply with the court's order under subsection (a) in paying the required amount of rent to the court, the landlord shall have judgment for possession and execution shall issue accordingly ....

(c) ... The court shall order payment of the money collected or portion thereof to the landlord *if the court finds that the rent is due and has not been paid to the landlord and that the tenant did not have any basis to withhold, deduct, or otherwise set off the rent not paid. The court shall order payment of the money collected or portion thereof to the tenant if the court finds that the rent is not due or has been paid, or that the tenant had a basis to withhold, deduct, or otherwise set off the rent not paid.*

(Emphases added.) A review of the legislative history indicates that HRS § 666–21 was modeled on HRS § 521–78, the rent trust fund statute pertaining to the residential landlord-tenant code.[9] *See* Hse. Stand.

**9.** HRS § 521–78 (1993) states, in relevant part, as follows:
   (a) At the request of either the tenant or the landlord in any court proceeding in which the

Comm. Rep. No. 324, in 1984 House Journal, at 978. HRS § 521–78 was enacted because "[t]he legislature [found] that the landlord often obtains possession after a long, drawn out court proceeding, only to find that the tenant cannot or will not pay for the time in which the tenant was in possession of the premises." 1978 Haw. Sess. L. Act 75, § 1, at 98. The legislature's concern was that

> if a dispute regarding the payment or non-payment of rent arises and the tenant refuses to pay all rents, a landlord has no recourse but to commence lengthy eviction proceedings. However, eviction proceedings will not compensate the landlord for the rent accrued since, as a practical matter, at the end of the proceedings the landlord would gain possession only.

Sen. Stand. Com. Rep. No. 557–78 in 1978 Senate Journal at 998. Thus, the intended rent trust fund procedure was to "expedite the resolution of [rent] disputes" and to provide an alternative to eviction proceedings. *See* Sen. Stand. Com. Rep. No. 595–84, in 1984 Senate Journal at 1304 (contemplating the purpose of HRS § 521–78).

As pointed out, the rent trust fund, HRS § 666–21, provides that, at the request of tenant or landlord, a court "shall order the tenant to deposit any disputed rent as it becomes due into the court." HRS § 666–21(a). "If the tenant is unable to comply . . . in paying the required amount of rent to the court, the landlord shall have judgment for possession." HRS § 666–21(b).[10] Significantly, the legislature indicated that the rent trust fund was necessary to prevent the situation in which the "tenant cannot or will not pay for the time in which the tenant was *in possession of the premises.*" 1978 Haw. Sess. L. Act 75 § 1, at 98 (emphasis added). Correlatively, if a tenant has not been given possession of the property, it would appear improper for the court to order the establishment of a rent trust fund. In accordance with the rationale underlying HRS §§ 666–1 and 666–21, landlords who do not provide possession to the tenant do not require an eviction proceeding or the protection of a rent trust fund.

■ Defense counsel protested the rent trust fund order on the basis that his client had "actually never taken possession." If Defendant was not provided with possession of the property or any part thereof, the court was obligated to hear counsel before ordering Defendant to pay into a rent trust fund.[11] Therefore, we vacate the court's March 5, 2002 judgment for possession and writ of possession and remand the case for a hearing

---

10. The tenant is afforded several protections from wrongful dispossession. First, "where the tenant can show to the court's satisfaction that the rent has already been paid to the landlord[,]" the court shall not order payment of rent into the fund. HRS. § 666–21(a). Second, deposit of rent is only permitted as it becomes due under

> payment or nonpayment of rent is in dispute, the court shall order the tenant to deposit any disputed rent as it becomes due into the court as provided under subsection (c), . . . provided that the tenant shall not be required to deposit any rent where the tenant can show to the court's satisfaction that the rent has already been paid to the landlord. . . . No deposit of rent into the fund ordered under this section shall affect the tenant's rights to assert either that payment of rent was made or that any grounds for nonpayment of rent exist under this chapter.
> (b) If the tenant is unable to comply with the court's order under subsection (a) in paying the required amount of rent *into* the court, the landlord shall have judgment for possession and execution shall issue accordingly.
> (Emphasis added.)

the lease terms. *See id.* In other words, the tenant's rental obligation is no greater than as negotiated in the lease. Third, the deposit of rent into the fund does not affect the tenant's right to assert defenses. The court has the discretion in a summary possession case to sever the issue of a determination of the landlord's right to summary possession from other issues. *See Lum,* 70 Haw. at 291, 769 P.2d at 1093–94; *see also Kamaole Two Hui,* 9 Haw.App. at 574 n. 9, 854 P.2d at 236 n. 9; Hse. Stand. Comm. Rep. No. 603, in 1978 House Journal, at 1660 (stating that "[n]o deposit of rent into the fund . . . shall affect the tenant's rights to assert either that payment of rent was made or that any grounds for nonpayment of rent exist" and indicating that payments into the rent trust fund "are not an admission of nonpayment or wrongful withholding, but an expression of good faith on the part of the tenant"). Lastly, sanctions are provided if the court finds that the requesting party raised the issue of payment or nonpayment of rent in bad faith. *See* HRS § 666–21(d).

11. HRS § 666–21(a) authorizes the court to order the tenant to deposit "rent as it becomes due" into the trust fund.

as to whether possession had been given Defendant so as to justify the imposition of such a fund.

## VI.

To provide guidance to the court on remand, *see e.g., Gap v. Puna Geothermal Venture,* 106 Hawai'i 325, 341–43, 104 P.3d 912, 928–30 (2004) (offering guidance to circuit court on remand as to setting appropriate sanction); *Nelson v. Univ. of Hawai'i,* 97 Hawai'i 376, 386 n. 6, 38 P.3d 95, 104 n. 6 (2001) (addressing evidentiary issues to provide guidance to the court on remand); *Torres v. Northwest Eng'g Co.,* 86 Hawai'i 383, 399, 949 P.2d 1004, 1020 (App.1997) (discussing the plaintiff's motion for partial JNOV upon vacatur of a JNOV order in favor of the defendant "for the edification of the circuit court on remand"), we address Defendant's argument that HRS § 666–21 is "both on its face and as applied in this case, contrary to bedrock and elementary minimum requirements of both due process of law and the equal protection of the laws."

### A.

■■ "The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." *Sandy Beach Def. Fund v. City Council,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989). This court has analyzed due process claims in two steps. *See id.* at 376, 773 P.2d at 260. The first question is whether the particular interest sought to be protected by a hearing is "property" within the meaning of the due process clauses. *Id.* If the interest is "property," the second step involves ascertaining the specific procedures required to protect the interest. *Id.*

■ From what we can discern based upon the arguments of the parties, Defendant identifies two interests constituting property within the meaning of the due process clauses—*possession* of the leased premises and the *rent* to be paid into the trust fund, in this case, $20,833.20.[12] Assuming, *arguendo,* these interests are protected under the due process clauses, HRS § 666–21 does not offend due process inasmuch as tenants are afforded an opportunity to challenge summary possession and motions for the establishment of a rent trust fund.

### B.

"Due process encompasses the opportunity to be heard at a meaningful time and in a meaningful manner. Due process is flexible and calls for such procedural protections as the particular situation demands." *Kernan v. Tanaka,* 75 Haw. 1, 22, 856 P.2d 1207, 1218 (1993) (internal quotation marks and citations omitted). With respect to *possession* as "property," the district courts have exclusive jurisdiction over the issue of summary possession, *see Kimball v. Lincoln,* 72 Haw. 117, 125, 809 P.2d 1130, 1134 (1991), and may issue writs of possession pursuant to HRS § 666–11. *See supra* note 5. In this case, Defendant was given notice with respect to possession of the property. As indicated *supra,* the question remaining is whether the hearing afforded Defendant was sufficient. At the February 25, 2002 hearing, Plaintiff orally moved for the establishment of a rent trust fund. Defense counsel had the opportunity to oppose the motion and argued that "possession was never provided" to Defendant. Our decision to remand, then, rests upon the insufficiency of the court's hearing.

---

12. As to Defendants' due process claim, the State first contends that there is no "deprivation of property" in the instant case as "[Defendants] ha[d] no freestanding 'leasehold possessory right' in the premises independent of the Agreement and its requirement of monthly rent payments." Based on this, the State posits that (1) Defendants were "obligated to make the March 1, 2002 [rent] payment," (2) "failure to make that payment was admitted" by Defendants, (3) said failure to pay "triggered the issuance of the judgment and writ of possession," (4) and, because the "March 1 payment date was selected by the Agreement," such payment date "did not require additional notice or hearing by the court."

Second, the State contends that as to Defendants' claim that "possession was never provided" and due process required a hearing, "[i]f . . . possession was never provided, then the deprivation of the 'contractual leasehold possessory rights' and of the advance payments was effected *prior to any court order* and by action of a *private party*." (Emphases in original.)

In connection with continued possession of the premises, HRS § 666–21 states that "the court shall order the tenant to deposit any disputed rent *as it becomes due*" and that "the tenant shall not be required to deposit any rent where the tenant can *show* to the court's satisfaction that the rent has already been paid." (Emphases added.) Implicit in this language is that rent must be "due" under any purported lease agreement and that the tenant must have an opportunity to "show" the court that the rent has already been paid. In this case, Defendant had an opportunity to challenge Plaintiff's motion for establishment of the rent trust fund, but the court did not make a finding as to whether Defendant was in possession of the premises to warrant application of HRS § 666–21. But this error does not alter the fact that HRS § 666–21 provides for, and Defendant was given, notice and a hearing with respect to possession.

## C.

With respect to *rent* as "property," HRS § 666–21 does not preclude tenants from raising defenses to claims of rent due and owing in the district court. HRS § 666–21(a) states that "[n]o deposit of rent ... shall affect the tenant's rights to assert either that payment of rent was made or that *any grounds for nonpayment of rent exist under this chapter.*" (Emphasis added.) Also, HRS § 666–21(c) permits the court to "order payment of the money collected or portion thereof to the tenant *if the court finds that the rent is not due or has been paid, or that the tenant had a basis to withhold, deduct, or otherwise set off the rent not paid.*" (Emphasis added.) Thus, HRS § 666–21 does not appear to preclude tenants from raising

defenses to rent at the time a request for the establishment of a rent trust fund is made, but, rather, expressly preserves the tenant's right to assert that rent was paid or that grounds for nonpayment exist.[13] *Cf. Lum v. Sun,* 70 Haw. at 296–97, 769 P.2d at 1096 ("The defendant may now also have any counterclaim 'arising out of and referring to the land or premises, the possession of which is being sought,' other than a real action or one in which the title to real estate comes in question, *heard in the district court along with the summary possession action* even though the value of the counterclaim may exceed the monetary limit for actions ordinarily triable there.") (quoting HRS § 604–5(a) (emphasis added) (internal brackets omitted)).

Moreover, in this case, Defendant filed a demand for a jury trial with respect to Plaintiff's $42,500.00 plus damage claim for unpaid rent. Hence, Defendant will presumably have an opportunity to defend against Plaintiff's damages claim. Accordingly, we cannot say that HRS § 666–21 violates due process.

Our decision is consistent with the United States Supreme Court decision in *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). In *Lindsey,* the Supreme Court addressed the constitutionality of the Oregon Forcible Entry and Wrongful Detainer Statute. Under that statute, a tenant was required to pay accruing rent pending judicial settlement of its disputes with the lessor.[14] *See id.* at 63, 67, 92 S.Ct. 862. *Lindsey* held that inasmuch as the tenant is not foreclosed from litigating its right to damages or other relief by bringing a separate action, the Oregon statute does not deny due process of law. *See id.* at 66–67, 92 S.Ct. 862. Similarly, under HRS § 666–21(a), the

13. Cases cited by Defendant do not support her position, but, rather, support the constitutionality of HRS § 666–21. *See e.g., Bank of Hawaii v. Kunimoto,* 91 Hawai'i 372, 389, 984 P.2d 1198, 1215 (1999) (holding that oral notice to local counsel of possible revocation of *pro hac vice* status is sufficient to comply with procedural due process); *Kernan,* 75 Haw. at 26, 856 P.2d at 1220 (concluding that Hawaii's administrative revocation of licenses program adequately protects citizens from wrongful license suspensions inasmuch as "timely judicial review is available to correct any deficiencies in the process").

14. The statute at issue in *Lindsey* provided, in relevant part, as follows:

No continuance shall be granted for a longer period than two days unless the defendant applying therefor gives an undertaking to the adverse party with good and sufficient security, to be approved by the court, conditioned for the payment of the rent that may accrue if judgment is rendered against the defendant.

*Lindsey,* 405 U.S. at 60 n. 3, 92 S.Ct. 862 (quoting Oregon Revised Statutes § 105.140).

tenant may assert grounds for nonpayment of rent and pursuant to HRS § 666–21(c), the court may require repayment of rent collected if the court finds that the rent was not due, was paid, or should be withheld. Also, as in this case, defendants are not precluded from filing a request for a jury trial on remaining claims of plaintiffs or any of their own counterclaims "triable of right by a jury." *Lum*, 70 Haw. at 297, 769 P.2d at 1097; *see id.* at 290, 769 at 1093 (concluding that "the [tenant] was entitled to a jury trial in the [circuit court] on her claims, but the jury demand did not divest the district court of power to decide whether or not [the landlord] should be restored to possession of the premises in question"). To reiterate, in this case, Defendant moved for a jury trial. Any defenses she raised to the rent have accordingly been transferred to the circuit court. Thus, because tenants, including Defendant, have "an opportunity to present every available defense[,]" *Lindsey*, 405 U.S. at 66, 92 S.Ct. 862, HRS § 666–21 comports with the due process clauses of the state and federal constitutions.

### D.

▮ Defendant also asserts an equal protection claim, arguing that HRS § 666–21 impermissibly "discriminates between those renters who can afford rent trust fund deposits and those who cannot, as a requirement for receiving a trial on the merits of the possessory issues."[15] Strict scrutiny is ordinarily applied where laws involve suspect classifications or fundamental rights. *See Baehr v. Lewin*, 74 Haw. 530, 571, 852 P.2d 44, 63 (1993). However,

> *unless fundamental rights or suspect classifications are implicated, we will apply the rational basis standard of review in examining a denial of equal protection claim.* Under this standard, to prevail, a party challenging the constitutionality of a

statutory classification on equal protection grounds has the burden of showing, with convincing clarity that *the classification is not rationally related to the statutory purpose,* or that the challenged classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and is therefore not arbitrary and capricious.

*Sandy Beach Def. Fund,* 70 Haw. at 380, 773 P.2d at 262 (citations omitted) (emphases added). *See State v. Hatori,* 92 Hawai'i 217, 225, 990 P.2d 115, 123 (App.1999) ("If a suspect classification or fundamental right is not involved, our inquiry of an equal protection claim is whether there is a rational basis for the challenged statute."). Defendant does not argue that tenants constitute a suspect class. Rather, she maintains that HRS § 666–21 impinges upon a fundamental right, that is, the right to notice and hearing.

▮ This court has observed that a right is fundamental if it "is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'" *Baehr,* 74 Haw. at 556, 852 P.2d at 57 (quoting *Griswold v. Connecticut,* 381 U.S. 479, 493, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring)). In other words, a right is fundamental if it is "so rooted in the traditions and collective conscience of our people that failure to recognize it would violate the fundamental principles of liberty and justice that lie at the base of all our civil and political institutions." *Id.* at 556–57, 852 P.2d at 57. By arguing that notice and hearing are fundamental rights, Defendant confuses procedural due process principles with substantive due process principles. As discussed previously, the right to notice and hearing is a procedural due process right and, hence, is not a "fundamental right" subject to strict scrutiny. Therefore, the rational basis stan-

---

**15.** As to Defendants' equal protection claim, the State maintains that "the legitimate, non-discriminatory rational government purpose underlying the [statute is to] maintain the status quo" during the "unpredictable" and "likely lengthy" legal proceedings initiated to resolve the landlord-tenant dispute. In the commercial context, the State reasons that "[t]he status quo is maintained because the landlord continues to provide the leased premises, and the tenant continues to pay the agreed-upon rent." Because rent payment is made to the court, the State argues that such payment "may be returned in whole or in part to the tenant at the conclusion of the entire case."

dard of review applies to Defendant's equal protection claim.

"Under the rational basis test, we inquire as to whether [HRS § 666–21] rationally furthers a legitimate state interest." *Id.* at 572, 852 P.2d at 64. Defendant fails to cite any case law or legislative history to support its position that HRS § 666–21 does not meet rational basis review. In *Lindsey,* the Supreme Court apparently employed the rational basis test. *See* 405 U.S. at 74, 92 S.Ct. 862 (stating that "since the classification under attack is *rationally related* to [the purpose of the statute], the statute is not repugnant to the [e]qual [p]rotection [c]lause of the Fourteenth Amendment") (emphasis added). It held that the statute withstood equal protection challenge based upon the "unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants." *Id.* at 72, 92 S.Ct. 862. According to the Supreme Court,

> *[t]he tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else.* Many expenses of the landlord[ ] continue to accrue whether a tenant pays his rent or not. *Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property.* Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute.

*Id.* at 72–73, 92 S.Ct. 862 (emphases added). The interest in "speedy adjudication ... to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession" sanctioned by the Supreme Court coincides with the underlying objective of § 666–21, which, as previously noted, is to maintain the status quo—simultaneously providing landlords with an expeditious alternative to eviction proceedings and tenants with an opportunity to maintain possession so long as rent is paid when properly due. The imposition of a rent trust fund—requiring tenants to pay rent in exchange for possession for the duration of the dispute—appears rationally related to achieving this statutory purpose. Inasmuch as a rational relationship exists between these objectives and the rent trust fund, we hold that HRS § 666–21 does not violate the protections guaranteed by the equal protection clauses.

## VII.

For the foregoing reasons, the court's March 5, 2002 judgment for possession and writ of possession are vacated and the case is remanded for a hearing on whether Defendant had possession of the property.